PHILIP D. WHEATLAND, Respondent, v. G. MORRIS PRYOR et al., Appellants.

The rule of constructive notice to a principal has no operation in a case where the agent himself has not received actual notice.

In an action to recover a balance alleged to be due plaintiff, who was doing business in Boston, from the firm of P. & Co., composed of defendants, doing business in New York, it appeared that plaintiff made a loan to defendant P. individually, and for the purpose of procuring repayment drew a draft upon him for the amount and deposited it to his, plaintiff's, credit with a Boston bank, which indorsed and sent it for deposit to its credit to a New York bank; that bank presented it for payment, received a firm check for the amount, surrendered the draft and subsequently obtained payment of the check. Defendants claimed that said bank acted in the transaction as agent for plaintiff; that it had notice when it took the check that the firm property was appropriated to pay the individual debt of P., and that plaintiff was chargeable with such notice and so became obligated to account to the firm for the money. *Held,* untenable; that the Boston bank when it took P.'s draft and gave plaintiff credit therefor became the owner of it, and so plaintiff was not responsible for the manner of its collection; also that, assuming the Boston bank was plaintiff's agent for the purpose of collecting the draft, the New York bank became its agent, not plaintiff's, and so, if the latter knew that the draft was paid with firm funds, while its knowledge could be attributed to its principal, the Boston

bank, it could not be imputed to plaintiff, and he was not liable to account to defendants for the money so received.

(Argued March 21, 1892; decided April 12, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department entered upon an order made May 15, 1891, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee.

This action was brought to recover a balance claimed to be due upon an account between the parties.

The facts, so far as material, are stated in the opinion.

*George C. Holt* for appellants. The referee erred in refusing to deduct from the plaintiff's claim the sum of $1,700 paid out of the firm assets, upon Wheatland's draft on Prior for $1,700, dated June 11, 1889. (*Debb* v. *Halsey*, 16 Johns. 28; *Rogers* v. *Bachelor*, 12 Pet. 229; *Geery* v. *Cockroft*, 1 J. & S. 146; *Elliot* v. *Dudley*, 19 Barb. 329; *A. N. Bank* v. *Savery*, 82 N. Y. 299; *U. N. Bank* v. *Underhill*, 102 id. 336; *Kendall* v. *Wood*, L. R. [6 Ex.] 243; *Moriarity* v. *Bailey*, 46 Conn. 592.) The General Term erred in holding that it had no power to review the questions of fact. (*Finch* v. *Parker*, 49 N. Y. 1; *Godfrey* v. *Moser*, 66 id. 250; *Baird* v. *Mayor*, etc., 96 id. 576; *Aldridge* v. *Aldridge*, 120 id. 614; *Healy* v. *Clark*, 120 id. 642; *Nostrand* v. *Knight*, 123 id. 618; *P.*, etc., Co. v. *Hopatcong*, 127 id. 212.)

*Michael H. Cardozo* for respondent. The referee has properly found upon conflicting testimony that the drafts of January thirty-first, February fifth, February twenty-seventh and March twentieth for $1,000, $1,050, $1,200, $3,125, were firm transactions. (*F. N. Bank* v. *Morgan*, 73 N. Y. 593.) The draft for $1,700, drawn June eleventh by plaintiff on Pryor individually, was properly disallowed as a claim against the plaintiff. (*U. N. Bank* v. *Underhill*, 102 N. Y. 336; 21 Hun, 178; *Elliot* v. *Dudley*, 19 Barb. 326.) The referee properly admitted testimony of Bacon as to the contents of the account kept by the plaintiff with the defendants, showing

that the disputed drafts were regularly entered in the firm account. (*Smith* v. *Rentz*, 60 Hun, 85.)

EARL, Ch. J.    Between October, 1887, and July, 1889, the plaintiff was a broker in Boston and the defendants were a firm of brokers doing business in the city of New York, and during that time the plaintiff and defendants had numerous and extensive dealings with each other.    The plaintiff drew numerous drafts upon the defendants; and they drew drafts upon him.    The firm of the defendants was dissolved in the latter part of June, 1889, and the business dealings between the parties then ceased.    The plaintiff thereafter, in July, commenced this action, claiming that upon the dealings between them there was the sum of $11,000 due to him from them. They in their answer denied that they were indebted to him, but on the contrary claimed that there was a small balance due to them.    The action being at issue was referred, and the referee found the sum of $9,537.63, besides interest, due the plaintiff.

There is no dispute that the sum found by the referee in favor of the plaintiff was due to him, either from the defendants as a firm, or from the defendant Pryor individually.    Upon the trial the plaintiff claimed and gave evidence tending to show that the sum was due to him from the firm.    The defendants, on the contrary, claimed and gave evidence tending to show that it was due from Pryor individually.    The indebtedness found by the referee was created by drafts drawn by the defendants in their firm name upon him and paid by him.    It was their contention upon the trial that, although these drafts were in form the drafts of the firm, they were caused to be drawn by the defendant Pryor in pursuance of an arrangement between him and the plaintiff to effect a loan by the plaintiff to him individually, and that the money obtained upon the drafts was a loan to him individually.    The evidence as to these drafts and the purpose for which they were drawn was conflicting, and upon the conflicting evidence the referee found that the money was advanced and loaned by means of these drafts to the firm, and that the firm became indebted to him.    The

findings of the referee having been affirmed at the General Term, are conclusive upon us.

The counsel for the defendants contends, however, that the General Term did not exercise the jurisdiction which it undoubtedly possessed to review the findings of the referee upon the evidence, and that it assumed that it was concluded by the findings, and he reaches this conclusion by reading the opinion pronounced at the General Term. We have frequently said that we cannot look at the opinion read in the court below for the purpose of determining whether it exercised its jurisdiction or not. To determine that question, we always look at its order or judgment. Looking there, we find nothing upon the subject.

Our attention is called to several exceptions taken during the progress of the trial in the reception and exclusion of evidence. We have given them careful consideration, and do not believe that any of them point out error prejudicial to the defendants.

There is one item, however, in controversy between the parties to which we will give particular attention. On the 28th day of May, 1889, the defendant Pryor, in his individual name, drew a draft upon the plaintiff for $1,700, which the plaintiff paid as a loan to him individually. On the eleventh day of June thereafter, for the purpose of procuring repayment of the loan thus made, the plaintiff drew upon Pryor individually, a draft for $1,700, payable on demand to the order of himself. That draft he indorsed and took to the International Trust Company of Boston, and there deposited it to his credit, and the trust company indorsed it and sent it for deposit to its credit to the National Bank of the Republic, of New York, and that Bank, on the twelfth day of June, presented the draft for payment at the defendants' office, where it was made payable, and there it received a check in the following form :

"NEW YORK, *June* 12, 1889.

"Seaboard National Bank pay to the order of George R. Rumrill, or ourselves seventeen hundred dollars. $1,700.

"S. MORRIS PRYOR & CO."

Indorsed upon the check were these words: "Pay to the order of the Bank of the Republic, George B. Rumrill." The Bank of the Republic then surrendered the draft drawn by the plaintiff and subsequently obtained payment of the check. The claim of the defendants is that the Bank of the Republic in presenting the draft and receiving payment thereof, acted as the agent of the plaintiff; that when it took the firm check and drew the money thereon it had notice that the firm property was appropriated to pay the individual debt of Pryor; that that notice was imputable to the plaintiff, and, therefore, that the funds of the firm were appropriated to the knowledge of the plaintiff to pay the individual debt of Pryor to himself; that he thus became obliged to refund the money to the firm, and that the defendants should, therefore, have had credit for that amount. To sustain his contention the defendants' counsel cites the following, among other authorities: (*Dob* v. *Halsey*, 16 Johns. 38; *Elliott* v. *Dudley*, 19 Barb. 329; *Atlantic State Bank* v. *Savery*, 82 N. Y. 299; *Union Nat. Bank* v. *Underhill*, 102 id. 336; *Rogers* v. *Bachelor*, 12 Peters, 229; *Moriarity* v. *Bailey*, 46 Conn. 592; *Kendall* v. *Wood*, L. R. [6 Ex.] 243.) We do not think any of these authorities are applicable to this case. As we understand the evidence the Boston bank took his draft from the plaintiff and gave him credit therefor in its account with him, and thus it became the owner of the draft, and thereafter it dealt with it as the owner thereof upon its own account. The plaintiff received the amount of the draft drawn by himself upon Pryor individually, not from the firm, but from the trust company to which he delivered it, and thus he came under no obligation whatever to the defendants on account of the transaction. For this conclusion, if any authority were needed, the case of *Moriarity* v. *Bailey* (*supra*), is prceisely in point. In that case there was the firm of Moriarity and Bailey, and Moriarity made his individual note payable to A. or order, and A. had it discounted upon his indorsement at a bank, and Moriarity paid it to the bank when due out of the partnership funds; and it was held that A. was not chargeable with the partnership funds thus used, although

he was an indorser of the note and interested in the payment, the money having been received by the bank, and not by him. Here, after the plaintiff transferred this draft to the Boston trust company, he could be made liable thereon only by such proceedings as would charge him as a drawer and indorser thereof.

But further, if we assume that the plaintiff employed the Boston trust company to collect the draft on Pryor, and that the trust company thus became his agent for that purpose, then the Bank of the Republic became the agent of the trust company and not of the plaintiff. (*Allen* v. *Merchants' Bank of New York*, 22 Wend. 215; *Commercial Bank of Penn.* v. *Union Bank of New York*, 11 N. Y. 203; *Ayrault* v. *Pacific Bank*, 47 id. 570.) The Bank of the Republic did not become responsible to the plaintiff, and the plaintiff could not in any way control or direct its conduct in the discharge of the duty which it had assumed to the trust company. Therefore, if upon the facts assumed, it knew that the draft drawn on Pryor individually was paid with firm funds, while that knowledge could be attributed to its principal, the trust company, it could not be attributed to the plaintiff who was not its principal. The reason for the rule which imputes knowledge of an agent to his principal is thus stated in Story on Agency (§ 140): "Upon general principles of public policy, it is presumed that the agent has communicated such facts to the principal, and if he has not, still the principal, having entrusted the agent with the particular business, the other party has a right to deem his knowledge and acts obligatory upon the principal, otherwise the neglect of the agent, whether designed or undesigned, might operate most injuriously to the rights of such party." Now, within the reason of this rule, could the constructive or imputed notice of the Boston trust company — it having no actual notice — be imputed to the plaintiff? There can be no presumption that it communicated to the plaintiff knowledge which it did not have; and in omitting to communicate to the plaintiff knowledge which it did not have, it was guilty of no wrong and no neglect of duty.

The rule of constructive notice to a principal can have no operation whatever in a case where the agent himself has not received actual notice. There are undoubtedly cases where an agent is authorized by his principal to employ sub-agents, and where the nature of the business entrusted to the agent is such that it must be assumed he was authorized to employ sub-agents for the principal; and in such cases it is frequently true that both the agent and the sub-agents are the representatives of the principal, and the knowledge which either of them acquired in the business may be imputed to the principal. But here it is settled upon abundant authority that the agent employed by the Boston trust company to collect this draft had no relation whatever to the plaintiff, and owed a duty — not to the plaintiff — but solely to the trust company. So in any view of this case, the knowledge acquired by the Bank of the Republic when it received the firm check in payment of the draft upon Pryor individually, cannot be imputed to the plaintiff. The plaintiff in the end, in some form, received his money from the Boston trust company in good faith, without notice, and he cannot be made to account for it to the defendants. (*Stephens* v. *Board of Education*, 79 N. Y. 183.)

The judgment should be affirmed with costs.

All concur.

Judgment affirmed.