■ MARINE MIDLAND BANK, Respondent, v PALM BEACH MOORINGS, INC., et al., Appellants.—Order and judgment (two papers), Supreme Court, New York County, entered November 16, 1977, granting in part plaintiff's motion for summary judgment, unanimously affirmed. Respondent shall recover of appellant $60 costs and disbursements. In affirming the order and judgment at Special Term granting plaintiff in part summary judgment, the

court does so for reasons other than those stated in the opinion at Special Term. The underlying action by the plaintiff was to recover on an unsecured time note in the sum of $385,000 executed by the defendant Palm Beach Moorings, Inc. (Palm Beach), and guaranteed by the defendant Paul. In resisting the motion for summary judgment, the defendants contended that the note in question was a renewal of prior similar notes, which in turn derived from still earlier notes totaling $725,000 executed by the defendant Palm Beach and indorsed by the previous controlling stockholder of that corporation, one Abraham Wolosoff, father-in-law of defendant Paul. It was further contended that Paul had been asked by his father-in-law to buy the controlling interest in Palm Beach and as part of that proposed purchase to arrange for the discharge of the previous corporate obligations of $725,000, or alternatively, to replace Wolosoff as a guarantor on the note; that he was introduced to a vice-president of the plaintiff bank who told him that the loans had been extended for construction purposes and had been so used which statements were inaccurate, either intentionally or made without an adequate basis; and that he relied upon those statements in entering into the agreement to acquire the controlling interest of the corporation and in guaranteeing later notes. As to the defendant Palm Beach, it is immediately apparent that nothing approaching an issue of fact was presented. On the version of the transaction presented in the papers by the defendants, it is obvious that Palm Beach, as of the time of the conversation with the bank official, was already obligated to plaintiff in the sum of $725,000 and nothing said by the bank official to Paul could conceivably have had any bearing on that obligation. As to the defendant Paul, we need not determine here if enough is presented in the papers to raise a triable issue as to whether the statements attributed to the bank official were intentionally untrue or were made without an adequate basis for believing them to be true. Nor need we decide whether defendant Paul's claim that he relied upon those statements, presented in conclusory fashion, is sufficient to present an issue of fact, although the total circumstances make the claim of reliance not an easy one to accept. The thesis advanced requires a finding that an experienced business man, assuming a controlling interest in a corporation and incurring heavy financial obligations, did so on the basis of verbal assurances given to him by the seller and a bank official. The inference that the defendant Paul assumed these burdens after having made, or caused to be made on his behalf, a careful examination of the relevant books and records of the corporation is a powerful one indeed. The strength of this conclusion is buttressed by the striking fact that in a meticulously prepared affidavit the defendant does not say whether he did or did not make or cause to be made an examination of the corporation's books and records. In any event, it is not denied that the defendant Paul had the opportunity to examine the corporate records before assuming the obligations reflected in the agreement of purchase. It is also clear that after buying the controlling interest in the corporation he had unlimited access to the relevant financial records before he caused the corporation to discharge the previous obligations and before he became a personal guarantor on any note. Here, surely, is a situation which calls for application of the principle articulated by the Court of Appeals in *Danann Realty Corp. v Harris* (5 NY2d 317, 322): "if the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations." Concur—Lupiano, J. P., Lane, Markewich and Sandler, JJ.