Edmund L. Kidd, Plaintiff, v Robert J. Havens, III, Defendant and Third-Party Plaintiff-Appellant, et al., Defendants.

Jefferson Abstract Corporation, Third-Party Defendant-Respondent.

Fourth Department, November 15, 1991

APPEARANCES OF COUNSEL

*Conboy, McKay, Bachman & Kendall (Stephen W. Gebo* of counsel), for defendant and third-party plaintiff-appellant.

*Smith, Sovik, Kendrick, Schwarzer & Sugnet, P. C. (James A. O'Shea* of counsel), for third-party defendant-respondent.

**OPINION OF THE COURT**

DENMAN, J.

The issue presented is whether a title company may be liable for negligence in certifying title to a purchaser of property with whom the title company was not in contractual privity, but for whose benefit the certification was made. We answer that question in the affirmative.

Robert J. Havens, the defendant, contracted to purchase real property from Richard and Annette D'Amico. Pursuant to their contractual obligation to provide the buyer with an updated abstract of title, the D'Amicos retained Jefferson Abstract Corporation (Jefferson) and ordered an abstract and title report. The report prepared by Jefferson covered the period October 5, 1986 to October 14, 1988 and certified that, during that period, there were no recorded deeds, mortgages, judgments, tax liens, etc., affecting title to the property except as specifically set forth in the report. So far as can be discerned from the document, that certification was not made to anyone in particular.

As conceded by Jefferson at oral argument on this appeal, the October 14, 1988 update incorporated information certified in a prior title report prepared by Jefferson on October 6, 1986. That report also had been ordered by the D'Amicos, in conjunction with their application for an SBA mortgage. That

prior report certified that, between October 28, 1982 and October 6, 1986, no mortgage had been recorded affecting title. In fact, there was one mortgage and two assignments affecting title to the property, all of which were recorded between October 28, 1982 and October 6, 1986. Thus, the October 6, 1986 report erroneously failed to note the existence of a $16,000 mortgage, dated October 29, 1982 and recorded November 1, 1982, given by the D'Amicos to Marcia Bailey. Additionally, that report erroneously failed to note two assignments of that mortgage, first to Marcia Calabrese, then to plaintiff Edmund L. Kidd, recorded on April 11, 1984.

Prior to the closing, the updated abstract of title and certified title report were delivered to the attorney for the D'Amicos, who forwarded them to Havens' attorney. Havens relied on the updated report in proceeding with his purchase of the property, which took place on December 6 or 7, 1988.

Shortly after his purchase of the property, Havens learned of the outstanding mortgage given by the sellers. In August 1989, Kidd, as assignee of the mortgage, brought an action against Havens and the D'Amicos to enforce his lien upon the property. Havens answered and instituted a third-party action against Jefferson seeking to recover damages for Jefferson's alleged negligence in certifying title. Havens seeks $5,418.42 plus interest, the unpaid balance of the D'Amicos' debt that Havens must pay to Kidd to discharge the mortgage and avoid foreclosure of his interest in the property. Jefferson answered the third-party complaint and denied liability. Apparently, the D'Amicos have defaulted in the foreclosure action.

Kidd obtained summary judgment on his foreclosure claim, the court declaring that the mortgage given by the D'Amicos was a valid and enforceable lien upon the property. Havens moved for summary judgment on his negligence claim against Jefferson. Jefferson cross-moved for summary judgment dismissing the third-party complaint for legal insufficiency. Jefferson argued that, in the absence of contractual privity with Havens, Jefferson could not be held liable to Havens for negligence in certifying title.

The court denied Havens' motion and granted Jefferson's cross motion. The court was persuaded by Jefferson's defense of lack of privity and decreed that Jefferson was not liable to Havens under those circumstances. Havens appeals.

The long-standing rule in New York is that a plaintiff cannot recover for economic injuries caused by a defendant's

negligent misrepresentation absent "actual privity of contract between the parties or a relationship so close as to approach that of privity" *(Ossining Union Free School Dist. v Anderson LaRocca Anderson,* 73 NY2d 417, 424; *see also, Iselin & Co. v Mann Judd Landau,* 71 NY2d 420, 425 ["a relationship * * * 'sufficiently approaching privity' "]; *Ultramares Corp. v Touche,* 255 NY 170, 182-183 [a "bond * * * so close as to approach that of privity"]). Here, since there was no contractual relationship between Havens and Jefferson, we must determine whether the relationship between the parties was the "functional equivalent" of privity *(Ossining Union Free School Dist. v Anderson LaRocca Anderson, supra,* at 419). In defining a defendant's duty to plaintiff in circumstances in which the parties are not in privity, the focus is upon the nature of the transaction. As recently stated by the Court of Appeals, in order for liability to attach, there must be: "(1) awareness that the reports were to be used for a particular purpose or purposes; (2) reliance by a known party or parties in furtherance of that purpose; and (3) some conduct by the defendants linking them to the party or parties and evincing defendant's *[sic]* understanding of their reliance" *(Ossining Union Free School Dist. v Anderson LaRocca Anderson, supra,* at 425, citing *Credit Alliance Corp. v Andersen & Co.,* 65 NY2d 536, 551).

As a shorthand rule encapsulating those requirements, it has been noted that, for defendants to be liable, reliance by plaintiff upon the representation must be "the end and aim of the transaction", rather than an "indirect or collateral" consequence of it *(Glanzer v Shepard,* 233 NY 236, 238-239; *see, White v Guarente,* 43 NY2d 356, 362 ["one of the ends and aims of the transaction"]).

The Court of Appeals has rejected a rule permitting recovery by any " 'foreseeable' plaintiff who relied on the negligently prepared report" *(Ossining Union Free School Dist. v Anderson LaRocca Anderson, supra,* at 425; *see, Credit Alliance Corp. v Andersen & Co., supra; Ultramares Corp. v Touche,* supra). The reason for the adoption of a more restrictive "equivalent to privity" rule is the concern that a broader rule would unreasonably expose those who certify information to unlimited liability *(see, Credit Alliance Corp. v Andersen & Co., supra; Ultramares Corp. v Touche, supra).* Thus, an important factor in the cases governing liability to third parties is whether the particular transaction carries with it the potential for dissemination of the report to,

and reliance upon it by, an indeterminate or indefinite number of third parties. If so, the court will be reluctant to find liability. On the other hand, the courts have been willing to impose liability upon defendants where, in the context of the particular transaction, the potential plaintiff or class of plaintiffs is fixed, definite, and identifiable *(compare, Ossining Union Free School Dist. v Anderson LaRocca Anderson, supra; White v Guarente, supra; Glanzer v Shepard, supra,* with *Credit Alliance Corp. v Andersen & Co., supra; Ultramares Corp. v Touche, supra).* Those principles have most frequently been applied in cases involving accountants' certifications *(see, e.g., Credit Alliance Corp. v Andersen & Co., supra; White v Guarente, supra; Ultramares Corp. v Touche, supra),* but "there is no reason for excepting from [the rule] defendants other than accountants who fall within the narrow circumstances" delineated by the rule *(Ossining Union Free School Dist. v Anderson LaRocca Anderson, supra,* at 424 [defendants were engineering consultants]; *see also, Glanzer v Shepard, supra,* at 238 [defendants were "public weighers"]).

Turning to the facts of this case, we conclude that Jefferson was "aware—indeed, could not possibly have failed to be aware" *(Ossining Union Free School Dist. v Anderson LaRocca Anderson, supra,* at 425) that a purchase or loan was pending and that, in reliance on the title company's certification, a particular and identifiable lender or purchaser would extend a loan or proffer the purchase money *(cf., Glanzer v Shepard, supra,* at 239). "[T]hat was the very purpose of [Jefferson's] engagement" *(Ossining Union Free School Dist. v Anderson LaRocca Anderson, supra,* at 425). Thus, we have no difficulty in concluding that Havens has met the first two prongs of the *Credit Alliance* test *(see, Credit Alliance Corp. v Andersen & Co., supra,* at 551; *see also, Ossining Union Free School Dist. v Anderson LaRocca Anderson, supra).* The title company necessarily was aware that the abstract and title reports were to be used for the specific purpose of facilitating a sale or mortgage of the property, and Havens certainly relied on the certification in furtherance of that purpose.

Jefferson argues that it did not know Havens' identity as the purchaser at the time it prepared the title report. In the unique circumstances of the title reporting business and of this transaction in particular, the title company's knowledge of the precise identity of the purchaser or lender is not an indispensable requirement *(see, White v Guarente, supra,* at 361). Title reports typically are generated in contemplation of

the owner's proposed sale to a particular purchaser or pending loan application to a particular lender. The policy reason underlying the "known plaintiff" component of the *Credit Alliance* test is to keep a defendant's potential liability within reasonable bounds, particularly to assure that it will not be potentially liable to " 'any member of an indeterminate class * * * present and prospective, known and unknown' " *(Credit Alliance Corp. v Andersen & Co., supra,* at 548, quoting *Ultramares Corp. v Touche, supra,* at 184). Here, that policy consideration is not undermined by extending the title company's liability to the single purchaser who relied on the title report. It is sufficient that the purchaser who seeks to recover for the title company's negligent representation was the only member of a fixed, definite, and identifiable class of potential plaintiffs *(see, White v Guarente, supra,* at 361-363).

The critical issue is whether the purchaser has satisfied the third component of the *Credit Alliance* test, which requires a showing of "some conduct by the defendants linking them to the party or parties and evincing defendant's *[sic]* understanding of their reliance" *(Ossining Union Free School Dist. v Anderson LaRocca Anderson, supra,* at 425, citing *Credit Alliance Corp. v Andersen & Co., supra,* at 551). Again, we focus on the unique nature of the title reporting business, the custom and usage of that profession, and the particular circumstances of this transaction. The title company urges that it certified title to the seller, not to the purchaser. As noted hereinabove, there is nothing in the title report to indicate that the certification ran to any particular person. Thus, the premise of the title company's argument appears to be flawed. Moreover, in contending that its obligations ran only to the seller, the title company merely highlights the absence of privity between it and the purchaser. That begs the essential question whether the relationship between the parties is an adequate substitute for contractual privity.

We observe that it would be senseless for an abstractor to certify to the seller that the seller had not previously conveyed or mortgaged the premises. Obviously, the seller would have notice of such facts. The D'Amicos certainly knew that they had mortgaged the premises. That fact merely underscores that, in the context of this type of transaction, and in the custom and usage of the title reporting business generally, the certification is intended for the benefit of, and reliance by, a particular lender or purchaser to whom it will be delivered. A title searcher is not immune from liability where, after

"preparing an abstract at the order of a client, [he] delivers it to another to induce action on the faith of it" *(Glanzer v Shepard, supra,* at 240). The rule cannot be otherwise merely because the abstract has been delivered to the seller for redelivery to the buyer or lender. "We must view the act in its setting, which will include the implications and the promptings of usage and fair dealing" *(Glanzer v Shepard, supra,* at 240-241). Pursuant to the custom and usage of its profession, the title company certified title "at the order of one with the very end and aim of shaping the conduct of another" *(Glanzer v Shepard, supra,* at 242). "In a word, the service rendered by the [title company] was primarily for the information of a third person, in effect, if not in name, a party to the contract, and only incidentally for that of the formal promisee" *(Ultramares Corp. v Touche, supra,* at 183). *" [T]ransmission of the certificate to another was* not merely one possibility among many, but *the "end and aim of the transaction" ' "* (Credit Alliance Corp. v Andersen & Co., supra, at 549, quoting *Ultramares Corp. v Touche, supra,* at 182, quoting *Glanzer v Shepard, supra,* at 238-239 [emphasis in original]). "Diligence was owing, not only to him who ordered, but to him also who relied" *(Glanzer v Shepard, supra,* at 242).

Accordingly, the order appealed from should be modified to deny Jefferson's cross motion for summary judgment and to reinstate the third-party claim, and as modified, affirmed.

CALLAHAN, A. P. J., GREEN, BALIO and DAVIS, JJ., concur.

Order unanimously modified on the law, and, as modified, affirmed, with costs to third-party plaintiff, in accordance with the opinion by DENMAN, J.