**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 92-2613**
_____

**JAMES C. THOMAS, Individually, and
as Trustee of the SLT TRUST #1,**

**Plaintiff-Appellant,**

**VERSUS**

**N.A. CHASE MANHATTAN BANK,**

**Defendant-Appellee.**

_____

**Appeal from the United States District Court
for the Southern District of Texas**

_____
(August 27, 1993)

Before POLITZ, Chief Judge, REAVLEY, and BARKSDALE, Circuit Judges.

BARKSDALE, Circuit Judge:

In issue is the summary judgment awarded N.A. Chase Manhattan Bank in this action by James C. Thomas, individually and as trustee of the SLT Trust #1 (SLT), arising out of Chase's referral of an investment partner, E. Lawrence Price. Previously, we held that Thomas lacked standing on certain claims, and as a result, affirmed the judgment as to them; remanded for factual findings on a standing issue; and deferred ruling on the remaining claims pending remand. *Thomas v. N.A. Chase Manhattan Bank*, 994 F.2d 236 (5th Cir. 1993). The district court having promptly entered the requested findings, we now turn to the remaining claims. Finding genuine issues of material fact regarding the claims by both Thomas

and SLT for fraud, negligent misrepresentation, and breach of fiduciary duty, we **REVERSE** and **REMAND;** on the conspiracy to defraud claims, we **AFFIRM.**

## I.

The complex factual background to this case is set out at length in our prior opinion, 994 F.2d at 238-41; we need not repeat it here.[1]  Briefly, the claims arise from Chase's referral of Price as an investment partner for Thomas in a Texas private banking franchise.  Thomas and Price entered their respective family trusts, SLT and the Elaine Price Trust (EPT) (of which Price is trustee) into a partnership (the Price-Thomas partnership), which in turn purchased the franchise from another partnership in which Thomas and SLT had been involved with the Cha family (the Chas).  Additionally, Thomas in his individual capacity executed a management contract with the newly formed Price-Thomas partnership to continue to manage the bank following the sale.  Price subsequently breached both the partnership agreement and the management contract and used the bank to commit a massive government securities tax fraud, driving it into insolvency. After the relationship with Price proved ruinous, Thomas learned that Chase allegedly knew of Price's history of bank fraud problems, including a serious incident involving Chase, yet Chase represented

---

[1]    Our statement of the facts in that opinion, and here, is based on the summary judgment record viewed in the light most favorable to Thomas, the nonmovant.  *See **Thomas***, 994 F.2d at 238 n.1; ***Harbor Ins. Co. v. Urban Constr. Co.***, 990 F.2d 195, 199 (5th Cir. 1993).

Price to Thomas as a valued Chase customer and misrepresented Price's troublesome history.

Thomas, individually and on behalf of SLT, sued Chase for fraud, negligent misrepresentation, breach of fiduciary duty, breach of contract, and conspiracy to defraud, alleging basically that Chase had "foisted" Price onto him pursuant to a cover-up of Price's fraudulent activities at Chase. The district court granted summary judgment for Chase on all claims. In our prior opinion, we upheld summary judgment for lack of standing on the breach of contract claim, and on the other claims to the extent that they related to the Stanhope indemnity agreements. *Id.* at 244. We remanded for the limited purpose of determining whether Thomas, as trustee, had the capacity to sue on behalf of SLT. *Id.*

On remand, Thomas submitted an affidavit and a copy of the SLT trust instrument. The district court found that the trust instrument "explicitly adopts the powers conferred by Missouri law allowing the trustee to bring suit". Accordingly, we now address the remaining claims: SLT's claims for damages resulting from its entering into partnership with EPT (fraud, conspiracy to defraud, negligent misrepresentation, and breach of fiduciary duty); and Thomas's claims for damages resulting from his entering into the management contract with the Price-Thomas partnership (same). Because the claims asserted by Thomas individually and on behalf of SLT arise from the same allegations, we address them together.[2]

---

[2] Thomas stated in his affidavit that, pursuant to the partnership formation and subsequent franchise sale, Chase also structured the Stanhope indemnity agreements by Price and Newcomb,

II.

As stated in our prior opinion, we review a summary judgment *de novo*, applying the same criteria as would a district court. *Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992). "Summary judgment is proper only if `there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law'". *Harbor Ins. Co. v. Trammell Crow Co.*, 854 F.2d 94, 98 (5th Cir. 1988), *cert. denied*, 489 U.S. 1054 (1989) (quoting Fed. R. Civ. P. 56(c)). "We consider all of the facts contained in the pleadings, depositions, admissions, answers to interrogatories, affidavits, and the inferences to be drawn therefrom in the light most favorable to the non-moving party". *Harbor Ins. Co. v. Urban Constr. Co.*, 990 F.2d 195, 199 (5th Cir. 1993). "Our review is not limited to the district court's analysis"; we may affirm on any basis presented to the district court. *Id.*

We previously held that New York law governs the claims by Thomas and SLT. *Thomas*, 994 F.2d at 241-42. The summary judgment record is described in our prior opinion, 994 F.2d at 238 n.1.

---

the consideration for which was Thomas's agreement to enter into the management contract with the Price-Thomas partnership. This evidence supports the allegation that Chase was involved in the execution of Thomas's management contract. Even absent evidence of direct involvement, however, a genuine issue of material fact on whether the partnership formation and the management contract were intended to be interdependent casts doubt on the summary judgment. *Cf.* *National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 203-05 (2d Cir. 1989) ("there would appear to be no reason in principle why, if two contracts are part of the same exchange, a fraudulent inducement as to one of the contracts might not, in at least some situations, excuse performance by the defrauded party of the other contract").

Most revealing about the record is the scant evidence submitted by Chase.

A.

The fraud claims relate to Chase's alleged misrepresentations that Price was a long-time, highly valued Chase client, when in fact Chase had terminated Price's accounts and was trying to rid itself of him; that, based on Chase's long-term dealings with and extensive due diligence on Price, Chase knew him to be an appropriate investment partner for Thomas; and that Price's banking problem in Chicago was mere "unpleasantness" -- "simply a routine banking relationship that didn't work out", when in fact Price had perpetrated a massive government securities tax fraud there for which he later suffered a tax court judgment. Additionally, when Thomas inquired of Chase regarding information ("second-hand rumors") he had learned from William Wu (his former partner's (the Chas) agent who had investigated Price), Chase allegedly encouraged Thomas to rely on its superior knowledge regarding Price and urged him not to listen to rumors. The district court granted summary judgment on these claims, based on its determination that Thomas could not justifiably rely on the alleged misrepresentations.

"New York requires proof of the traditional five elements of fraud: misrepresentation of a material fact, falsity of that representation, scienter, reliance and damages". **Mallis v. Bankers Trust Co.** (**Mallis I**), 615 F.2d 68, 80 (2d Cir. 1980) (emphasis omitted), *cert. denied*, 449 U.S. 1123 (1981). Justifiable reliance

is the only element in issue; it is not disputed that material fact issues exist regarding the other four elements.

To satisfy the requirement of justifiable reliance, a plaintiff must establish that his reliance on the defendant's misrepresentations was justifiable "both in the sense that [he] was justified in believing the representation, and that he was justified in acting upon it". *Compania Sud-Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co.*, 785 F. Supp. 411, 419 (S.D.N.Y. 1992). When the matters represented are "peculiarly within the [defendant's] knowledge", the plaintiff is not required to investigate them, "as he has no independent means of ascertaining the truth". *Mallis I*, 615 F.2d at 80 (internal quotations omitted). When the plaintiff "has the means of knowing, *by the exercise of ordinary intelligence*, the truth", however, he will be barred as a matter of law from asserting justifiable reliance. *Id.* at 80-81 (emphasis added); *Danann Realty Corp. v. Harris*, 157 N.E.2d 597, 600 (N.Y. 1959). Apart from this principle, the question of justifiable reliance is one of fact. *See Country World, Inc. v. Imperial Frozen Foods Co.*, 589 N.Y.S.2d 81, 82 (N.Y. App. 1992); *Freschi v. Grand Coal Venture*, 583 F. Supp. 780, 785 (S.D.N.Y. 1984). Accordingly, it bears repeating that it is a summary judgment we are reviewing; we determine whether there are material fact issues.

Chase's representations regarding its dealings with Price were "peculiarly within its knowledge". Thomas would have no means of ascertaining independently (certainly not "by the exercise of

ordinary intelligence", *see infra*) whether Price was a long-time, highly valued Chase customer, or whether Chase believed Price to be a worthy investment partner for Thomas. Therefore, at least with respect to those representations, Thomas is not barred as a matter of law from establishing justifiable reliance.

With respect to its alleged representations about Price's bank fraud in Chicago, Chase contends that Thomas had independent access to that information and therefore cannot assert justifiable reliance on Chase. It emphasizes that Thomas was alerted to a problem by Wu, and should have pursued further investigation. Citing **Most v. Monti**, 456 N.Y.S.2d 427, 428 (N.Y. App. 1982); **Marine Midland Bank v. Palm Beach Moorings, Inc.**, 403 N.Y.S.2d 15 (N.Y. App. 1978); and **Grumman Allied Indus., Inc. v. Rohr Indus., Inc.**, 748 F.2d 729 (2d Cir. 1984), Chase asserts that a sophisticated businessman like Thomas could not, as a matter of law, justifiably rely on Chase's verbal assurances in entering into a business deal of the magnitude involved here.

For several reasons, we conclude that the cases cited do not support the summary judgment. First, each of them involved representations made by the opposing party to a transaction. **Most** involved the seller of a health club who allegedly misrepresented to the buyer that the property was fully assessed for tax purposes. *See* 456 N.Y.S.2d at 428. **Marine Midland** involved a bank that allegedly misrepresented the status of corporate loans to a potential guarantor in order to obtain the guaranty obligation. *See* 403 N.Y.S.2d at 16. **Grumman** involved the seller of a

- 7 -

subsidiary who allegedly misrepresented to the buyer material facts relating to certain assets purchased. *See* 748 F.2d at 730-33.

In contrast, Chase was not directly opposite Thomas in the transactions; instead, it acted as a sort of intermediary. Thomas admittedly knew that Chase served as Price's broker; but, Chase allegedly approached *Thomas* for its broker's fee prior to the partnership formation, *Thomas* agreed to the fee, and the *Price-Thomas partnership*, not Price or EPT, actually paid it. Additionally, Chase and Thomas allegedly were involved together in other projects, including Columbia Investors and Acquisition Ventures. *See* 994 F.2d at 238-39. In these circumstances, Thomas had less reason to question Chase's representations than did the plaintiffs in the cases cited by Chase.

Moreover, each of the cases cited also turns on the fact that the parties claiming justifiable reliance had independent access to the information in issue. In **Most**, it was "readily available to plaintiffs upon their making reasonable inquiry". 456 N.Y.S.2d at 428. Similarly, in **Marine Midland**, the guarantor had "unlimited access to the relevant financial records ... before he became a personal guarantor on the note". 403 N.Y.S.2d at 17. Finally, in **Grumman**, there was "undisputed evidence demonstrating that [the buyer] enjoyed unfettered access to [the seller's] plants, personnel and documents ...". 748 F.2d at 737.

Here, Chase failed to submit any evidence that Thomas could have independently obtained additional information about Price. Chase stated at oral argument in our court that a simple inquiry by

Thomas would have revealed the entire matter, but no evidence was presented to that effect. To the contrary, Wu allegedly told Thomas that his sources were confidential, and refused to reveal them, indicating that perhaps the information was *not* publicly available.

Finally, and of great importance, Thomas *did* seek further information about Price when he telephoned Chase vice president Mary Small to inquire about the Chicago incident. The evidence presented by Thomas, through his affidavit, was that Small not only assured him that Chase had thoroughly investigated all aspects of the Chicago incident, but affirmatively attempted to block any further investigation by urging Thomas to rely on Chase's superior knowledge and not to pursue rumors. Chase did not present any evidence to rebut Thomas's affidavit regarding this telephone call. In light of the unrebutted evidence of this active concealment, absent in the cases cited, we cannot hold, as a matter of law, that Thomas was not justified in relying on Chase's assurances.

Citing agency principles, Chase finally contends that Wu's additional knowledge regarding Price's fraud is imputed to Thomas, barring justifiable reliance. Evidence submitted by Chase *does* indicate that Wu *may* have known more about Price's problems than he conveyed to Thomas; specifically, handwritten notes by Wu in 1983 mention yet another Chicago bank with which Price had problems. Relying on the rule of law that principals are imputed with the knowledge of their agents, Chase reasons that Wu's knowledge is

imputed to his principals, the Chas, and that their knowledge is in turn imputed to their partner, Thomas.[3]

"It is a basic tenet of the law of agency that the knowledge of an agent, or for that matter a partner or joint venturer is imputed to the principal". *Mallis v. Bankers Trust Co.* (*Mallis II*), 717 F.2d 683, 689 n.9 (2d Cir. 1983). A corollary to that tenet, however, is that "[k]nowledge of an agent, even of a general agent, to be imputed to his principal, must be *actual* knowledge". *Hare & Chase, Inc. v. National Surety Co.*, 49 F.2d 447, 458 (S.D.N.Y. 1931) (emphasis added), *aff'd*, 60 F.2d 909 (2d Cir.), *cert. denied*, 287 U.S. 662 (1932); *e.g.*, *Nolan v. Sam Fox Publishing Co.*, 499 F.2d 1394, 1398 (2d Cir. 1974); *Ferrara v. Scharf*, 466 F. Supp. 125, 131 (S.D.N.Y. 1979). The principle of imputed knowledge "rests upon the duty of the agent to disclose to his principal all material facts coming to his knowledge with reference to the scope of the agency and upon the presumption that the agent has discharged his duty". *Otsego Mut. Fire Ins. Co. v. Darby*, 358 N.Y.S.2d 314, 318 (N.Y. Sup. Ct. 1974). It follows,

---

[3] Chase also contends that because Wu served on the management committee of the Church & Thomas bank, he also acted as agent to the Cha-Thomas partnership in conducting his investigation. Thomas's affidavit, however, contradicts this assertion:

> At no time did William Wu become the agent or partner to the Thomas family, the SLT Trust or me regarding the proposed Chase-sponsored Price-Thomas partnership. At no time did William Wu assume responsibility beyond the scope of his assignment by the Cha family concerning Newcomb's financial capacity.

This disputed fact cannot support a summary judgment.

therefore, that "[t]here can be no presumption that [an agent] communicated to the [principal] knowledge which it did not have". *Wheatland v. Pryor*, 30 N.E. 652 (N.Y. 1892) (rejecting contention that the imputed knowledge of a principal could be "reimputed" to *its* principal); *see also* **In re Agent Orange Prod. Liab. Litig.**, 597 F. Supp. 740, 796 (E.D.N.Y. 1984) (citing the Restatement of Agency § 277, that a principal is not affected by knowledge that agent should have, but did not, acquire), *aff'd*, 818 F.2d 145 (2d Cir. 1987), *cert. denied*, 484 U.S. 1004 (1988).

Even assuming, therefore, that Wu had sufficient information to bar justifiable reliance, Chase must prove that the information was actually communicated to his principal, the Chas, in order for it to even be arguably imputed to Thomas. Chase does not make this contention, and we see no evidence to support it. Accordingly, the summary judgment cannot be upheld on this basis.

In sum, Thomas is not barred as a matter of law from establishing that he justifiably relied on any of Chase's alleged misrepresentations. Because the remaining questions regarding justifiable reliance, as well as the other elements of fraud, present material fact issues, we reverse the summary judgment as to fraud.

B.

The claims for conspiracy to defraud rest on the same allegations as the fraud claims -- Chase's alleged misrepresentations in attempting to rid itself of Price and thereby conceal its role in Price's fraud. In the district court, Thomas

- 11 -

asserted that civil conspiracy is an independent cause of action under Texas law.  On appeal, however, Thomas does not brief this issue under either Texas or New York law.

"Under New York State law, `it is well settled that a mere conspiracy to commit a [tort] is never itself a cause of action'".  *Conrad v. Perales*, 818 F. Supp. 559, 565 (W.D.N.Y. 1993) (quoting *Jan Sparka Travel, Inc. v. Hamza*, 587 N.Y.S.2d 958, 960 (N.Y. App. 1992); *see also Alexander & Alexander of New York, Inc. v. Fritzen*, 510 N.Y.S.2d 546, 547 (N.Y. 1986).  "Allegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort".  *Fritzen*, 510 N.Y.S.2d at 547.

Thomas does not attempt to connect Chase with the actions of another defendant; indeed, there is no other defendant.  Instead, Thomas's allegations involve Chase's fraudulent actions, as discussed above.  In any event, issues not briefed are waived. *Zeno v. Great Atlantic & Pacific Tea Co.*, 803 F.2d 178, 180-81 (5th Cir. 1986); Fed. R. Civ. P. 28(a)(5).  Accordingly, the summary judgment on the conspiracy to defraud claims is affirmed.

C.

The negligent misrepresentation claims also rest on the allegations discussed in relation to fraud.  The district court granted summary judgment for these claims on the same basis as for fraud -- its conclusion that Thomas could not justifiably rely on the alleged misrepresentations.

Regarding negligent misrepresentation, the New York Court of Appeals has stated:

- 12 -

> As to duty imposed, generally a negligent statement may be the basis for recovery of damages, where there is carelessness in imparting words upon which others were expected to rely and upon which they did act or failed to act to their damage ..., but such information is not actionable unless expressed directly, with knowledge or notice that it will be acted upon, to one whom the author is bound by some relation of duty, arising out of contract or otherwise, to act with care if he acts at all ....

*White v. Guarente*, 372 N.E.2d 315, 319 (N.Y. 1977); *Enzo Biochem, Inc. v. Johnson & Johnson*, 1992 WL 309613 (S.D.N.Y. 1992) (quoting *White*). Contrary to the district court's assumption, justifiable reliance *per se* does not appear to be an element of the tort under New York law.[4] Instead, as discussed below, New York courts appear to focus on the relationship between the parties in determining whether a cause of action will lie; where the relationship is sufficiently close, a party will be allowed to recover damages caused by the negligent misrepresentations of another. But, in any event, the above holding with respect to justifiable reliance would apply to the negligent misrepresentation claims as well as to those for fraud.

In the keystone case of *Credit Alliance Corp. v. Arthur Andersen & Co.*, 483 N.E.2d 110 (N.Y.), *amended*, 489 N.E.2d 249 (N.Y. 1985), the New York Court of Appeals focused on the relationship required to sustain a cause of action for negligent misrepresentation absent privity of contract. After reconsidering its holdings in *Ultramares Corp. v. Touche*, 174 N.E. 441 (N.Y. 1931), and *Glanzer v. Shepard*, 135 N.E. 275 (N.Y. 1922), the court

---

[4]    As noted in our prior opinion, the district court did not address the choice of law issue; it is unclear what law it applied.

- 13 -

reaffirmed the principle that "a relationship `so close as to approach that of privity' remains valid as the predicate for imposing liability" for negligent misrepresentation. *Credit Alliance*, 483 N.E.2d at 115. The court then expanded this principle into three prerequisites for recovery: (1) awareness that the information is to be used for a particular purpose; (2) reliance by a known party in furtherance of that purpose; and (3) some conduct by the defendant linking it to that party and evincing defendant's understanding of that party's reliance. *Id.* at 118. "As a shorthand rule encapsulating those requirements, it has been noted that, for defendants to be liable, reliance by plaintiff upon the representation must be `the end aim of the transaction', rather than an `indirect or collateral' consequence of it". *Kidd v. Havens*, 577 N.Y.S.2d 989, 991 (N.Y. App. 1991) (discussing *Credit Alliance* and quoting *Glanzer*).

*Credit Alliance* addressed the liability of an accountant to a third party, but the principles articulated have been applied subsequently in other contexts. *E.g.*, *Ossining Union Free School Dist. v. Anderson LaRocca Anderson*, 539 N.E.2d 91 (N.Y. 1989) (school district sued consulting engineers hired by school district's architect); *Kidd*, 577 N.Y.S.2d 989 (purchaser of property sued title company). Most relevant to the present case is *Banque Indosuez v. Barclays Bank PLC*, 580 N.Y.S.2d 765 (N.Y. App. 1992), in which the defendant bank induced the plaintiff to extend a loan to a bank client by negligently misrepresenting the status of an overdraft in a letter of reference requested by the

plaintiff. Noting that the plaintiff had not "hired" the bank to provide it with the credit information, the court nonetheless affirmed the denial of summary judgment, holding that a sufficiently close relationship existed between the parties to sustain the claim. *Id.* at 766-67.

Under this precedent, the negligent misrepresentation claims surely survive summary judgment. Thomas's evidence provides the three predicates to recovery: (1) that Chase knew the information was to be used for a particular purpose (*i.e.*, the formation of the Price-Thomas partnership and the execution of Thomas's management contract with it); (2) that Thomas, a known party, relied on the information in furtherance of that purpose; and (3) that Chase dealt extensively with Thomas, evincing its understanding of his reliance. These circumstances indicate the existence of a relationship "so close as to approach that of privity"; particularly significant is Thomas's affidavit evidence that Chase approached him for the broker's fee. Accordingly, the summary judgment on the negligent misrepresentation claims is also reversed.

### D.

The final claims are for breach of a fiduciary duty. The district court held that there was no fiduciary relationship between Thomas and Chase, because the Price-Thomas partnership, not Thomas or SLT, paid the broker's fee. Thomas contends that there was a fiduciary relationship, asserting that Chase acted as his broker in structuring both the Price-Thomas partnership and his

management contract with it. The only dispute for purposes of summary judgment is the existence of a fiduciary relationship.

To establish a claim for breach of fiduciary duty, a plaintiff must prove "(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that the plaintiff suffered damages as a result of the breach". *Whitney v. Citibank, N.A.*, 782 F.2d 1106, 1115 (2d Cir. 1986) (applying New York law). "New York state courts, as well as others, have recognized that *whether a fiduciary relationship exists is a question of fact.*" *Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*, 1992 WL 121726, at *21 (N.D.N.Y. 1992) (footnotes omitted) (emphasis added); *see United States v. Reed*, 601 F. Supp. 685, 705 (S.D.N.Y.), *rev'd on other grounds*, 773 F.2d 477 (2d Cir. 1985). In *Reed*, the court explained:

> In the final analysis, the assessment of the existence or absence of such a relationship invariably requires a series of factual findings and generally rests with the finder of fact, i.e., the jury, at trial. Judges, charged with making the determinations of law by which to structure and evaluate those findings, may undertake this assessment only in those cases in which it is possible and proper to conclude that, as a matter of law, such a relationship does or does not exist. The very nature of the subject matter, however, reveals that such occasions will be scarce ....

601 F. Supp. at 705.

Although the exact limits of the term "fiduciary relationship" are impossible to define, *Compania Sud-Americana de Vapores v. IBJ Schroder*, 785 F. Supp. 411, 425-26 (S.D.N.Y. 1992), the following explanation has been offered:

- 16 -

> A fiduciary relationship is one founded on trust or confidence reposed by one person in the integrity and fidelity of another. The term is a very broad one. It is said that the relation exists, and that relief is granted in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed. The origin of the confidence and the source of the influence are immaterial. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in and relies upon another. Out of such a relation, the laws raise the rule that neither party may exert influence or pressure upon the other, take selfish advantage of his trust or deal with the subject matter of the trust in such a way as to benefit himself or prejudice the other except in the exercise of utmost good faith.... A fiduciary relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other.

*Mobil Oil Corp. v. Rubenfeld*, 339 N.Y.S.2d 623, 632 (N.Y. Civ. Ct. 1972), *aff'd*, 357 N.Y.S.2d 589 (N.Y. Sup. Ct. 1974), *rev'd on other grounds*, 370 N.Y.S.2d 943 (N.Y. App. 1975), *aff'd*, 358 N.E.2d 882 (N.Y. 1976); *Reed*, 601 F. Supp. at 707 (quoting *Mobil Oil*).

In the business context, "[a] fiduciary relationship is not created by an arm's length contract", *Deem v. Lockheed Corp.*, 1991 WL 196171, at *7 (S.D.N.Y. 1991); *see Beneficial Commercial Corp. v. Murray Glick Datsun, Inc.*, 601 F. Supp. 770, 772 (S.D.N.Y. 1985); and "`a conventional business relationship, without more, does not become a fiduciary relationship by mere allegation'", *Compania Sud-America*, 785 F. Supp. at 426 (quoting *Oursler v. Women's Interart Center, Inc.*, 566 N.Y.S.2d 295 (N.Y. App. 1991)). A fiduciary relationship may arise, however, "where confidence is based upon prior business dealings". *Beneficial*, 601 F. Supp. at 772. In order to recover for breach of fiduciary duty in a purely

business transaction, a plaintiff must show that the defendant has superior and accurate knowledge, and the defendant "must have misled the plaintiff by false representations concerning the subject of his superior knowledge or expertise". *Citytrust v. Atlas Capital Corp.*, 570 N.Y.S.2d 275, 279 (N.Y. App. 1991) (internal quotations omitted). "Such claims are rarely sustained in New York." *Id.*

Thomas's evidence precludes summary judgment on these claims. Chase's alleged misrepresentations relate to Price's client relationship with Chase and banking history elsewhere -- subjects about which Chase at least arguably had superior knowledge. According to Thomas, Chase encouraged him to rely on its superior knowledge regarding Price, which it obtained pursuant to an extensive investigation. This indicates the requisite confidence reposed by Thomas, with resulting superiority and influence by Chase.

Moreover, the complexity of the relationships involved counsels against a determination that Chase, as a matter of law, did not owe a fiduciary duty to Thomas. *See* **Crewnick Fund v. Castle**, 1993 WL 88243, at *11 (S.D.N.Y. 1993). In **Crewnick**, the defendant allegedly failed to disclose material adverse financial information when the plaintiff purchased stock in a now-defunct savings and loan. The defendant had previously served as an investment advisor to the plaintiff, and in the subsequent transaction, played multiple roles. Not only did the defendant structure the stock purchase transaction between the plaintiff and

a co-defendant, but it was an insider in the thrift, and was involved in the transaction for which the co-defendant needed the funds. The court denied summary judgment, because the complexity of the relationships created a genuine issue of material fact about whether a fiduciary duty was owed. *Id.*

Similarly, as discussed in our earlier opinion, 994 F.2d at 238-39, Chase and Thomas had extensive prior dealings involving Columbia Investors and Acquisition Ventures, in which they allegedly shared substantial financial interests. Additionally, Chase held accounts for the Church & Thomas Bank during the years preceding the events in issue. Finally, as noted, the summary judgment evidence is that Chase encouraged Thomas to rely on its recommendation of Price, and even sought a broker's fee from Thomas. As in *Crewnick*, the complexities of the relationship between Thomas and Chase present a genuine issue of material fact as to whether a fiduciary relationship existed. Accordingly, the summary judgment on those claims is reversed.

### III.

For the foregoing reasons, we **REVERSE** the summary judgment on the claims (both Thomas's and SLT's) for fraud, negligent misrepresentation, and breach of fiduciary duty; and **AFFIRM** on the claims for conspiracy to defraud. We emphasize again, as held in our prior opinion, that Thomas has standing, individually and on behalf of SLT, only to the extent that the claims relate to the

formation of the Price-Thomas partnership and the execution of Thomas's management contract with it.

**AFFIRMED in part, REVERSED in part, and REMANDED.**