DORKING GENETICS, a Zimbabwean partnership c/o Dorking Farm Concession, Zimbabwe and Ian Arthur King, a Zimbabwean citizen c/o Dorking Farm Concession, Zimbabwe, Plaintiff–Appellants,

v.

UNITED STATES of America and David A. Evans, D.V.M., individually, and in his capacity as an employee of the United States of America, acting on its behalf, Defendants–Appellees.

No. 1062, Docket 94–6193.

United States Court of Appeals, Second Circuit.

Argued March 9, 1995.

Decided Feb. 2, 1996.

Jack P. Janetatos, Washington DC (Stuart M. Weitz, Baker & McKenzie, Washington, DC, of counsel), for appellants.

Phyllis J. Pyles, Washington, DC (Daniel R. Unumb, U.S. Department of Justice, Washington, DC, of counsel), for appellee United States.

Shirley K. Kirchberger, Kirchberger & Bender, Buffalo, NY, for appellee Evans.

Before: MAHONEY, WALKER, and LEVAL, Circuit Judges.

WALKER, Circuit Judge:

Plaintiffs Dorking Genetics and Ian King (together "Dorking") appeal from orders of the United States District Court for the Northern District of New York (Constantine G. Cholakis, *District Judge* ) dismissing their complaint against defendants the United States and Dr. David A. Evans. Dorking alleged in its complaint that the United States was negligent in certifying that cattle Dorking purchased in New York for export to Zimbabwe met that country's health requirements. Dorking also alleged that Dr. Evans, the veterinarian who examined the cattle, committed malpractice by failing to detect and report that the cattle had been exposed to bovine leucosis. According to the complaint, the defendants' acts and omissions proximately caused the destruction of most of Dorking's entire herd of cattle after Zimbabwean authorities discovered that an imported heifer had bovine leucosis.

The district court dismissed the claim against the United States because claims for negligent misrepresentation are not actionable under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, *et seq.* It also denied leave to amend the complaint as futile since Dorking's proposed amended claims were barred by the discretionary-function exception to governmental liability under the FTCA. 28 U.S.C. § 2680(a). Finally, the district court dismissed Dorking's claim against Dr. Evans on the ground that Dorking could not prove a relationship sufficiently close to privity of contract. Dorking filed this appeal.

## BACKGROUND

On a motion directed to the pleadings, we must take as true the facts as alleged in the complaint. Dorking Genetics is a Zimbabwean partnership engaged in breeding cattle with certain genetic profiles. Ian King, a Zimbabwean citizen, is a general partner in Dorking Genetics as well as the owner of a dairy farm which conducts a genetic breeding program separate from Dorking Genetics.

Representing his own interests and those of Dorking Genetics, King traveled on an unspecified date to the United States to purchase cattle suitable for breeding. King selected three heifers from the Mansion Valley Estate Farm ("Mansion Valley") in De Lancey, New York. Dr. Evans, a veterinarian who is authorized and accredited by the United States Department of Agriculture ("USDA") to certify cattle for export, conducted tests on the heifers. The three heifers tested positive for bovine leucosis and were not purchased.

Subsequently, David Rama, who worked for a cattle broker, selected three different heifers on Dorking's behalf from the same herd as the previous three. Mansion Valley contracted with Dr. Evans, on behalf of Dorking, to test the cattle for certain diseases and to issue a United States Origin Health Certificate. The three heifers selected by Rama tested negative for bovine leucosis, even though they had been exposed to the heifers who had previously tested positive for that disease. Dr. Evans prepared a health certificate incorporating specific Zim-

babwean health requirements for imported cattle, including the requirement that the cattle come from a herd with no history of bovine leucosis. Dr. Evans certified that these heifers met that requirement. He then forwarded the certificate and blood tests to Dr. Gerald F. Toms, a USDA veterinarian, who reviewed the certificate and endorsed it. Drs. Toms and Evans also executed a separate Zimbabwean Import Permit, which stated that there was no history of bovine leucosis in the herd of origin. Both Dr. Evans and Dr. Toms knew that the first three heifers from the Mansion Valley herd had tested positive for bovine leucosis.

In May 1987, Dorking imported the second set of three heifers into Zimbabwe. In February 1989, one of the heifers began to display clinical symptoms of bovine leucosis and subsequently tested positive for that disease. This was the first appearance of bovine leucosis in Zimbabwe. The Zimbabwean Veterinary Department immediately placed Dorking Farm under quarantine, allowing only cattle marked for slaughter to leave the farm. Because of the outbreak of bovine leucosis in the herd, Dorking had to slaughter the cattle. The slaughter price was far below the price the cattle would have fetched as healthy breeding stock, resulting in substantial monetary losses.

## DISCUSSION

### I. *Dorking's Negligence Claim Against the United States*

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer,* —— U.S. ——, ——, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994). Since "[s]overeign immunity is jurisdictional in nature," the United States may only be sued with its consent. *Id.* In the Federal Tort Claims Act ("FTCA"), Congress has given a limited consent for the federal government to be sued for tort liability: "The United States [with certain stated exceptions] shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The

statutory provision regarding the jurisdictional grant over FTCA cases, 28 U.S.C. § 1346(b), further provides,

> [T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

If a claim is cognizable under § 1346(b), that statute provides the exclusive remedy. *Meyer*, —— U.S. at ——, 114 S.Ct. at 1001. A claim is cognizable under § 1346(b) if it is actionable thereunder, i.e., if it alleges the six elements of that provision. Thus, the claim must be " '[1] against the United States, [2] for money damages, ... [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.' " *Id.* (quoting 28 U.S.C. § 1346(b)). Unless the claim is saved by some other waiver of sovereign immunity, *see id.* at —— —— ——, 114 S.Ct. at 1001–02; *Hatzlachh Supply Co. v. United States*, 444 U.S. 460, 462–63, 100 S.Ct. 647, 649, 62 L.Ed.2d 614 (1980), a claim which fails to state all six elements of § 1346(b) or which is otherwise excepted from § 1346(b), *see* 28 U.S.C. § 2680, must be dismissed for lack of subject matter jurisdiction. *Fazi v. United States*, 935 F.2d 535, 537 (2d Cir.1991).

The district court dismissed Dorking's claim against the government. In the district court's view, the alleged negligent acts caused the heifers' herd history to be misrepresented in the Health Certificate, and an action for misrepresentation is not cognizable under the FTCA. *See* 28 U.S.C. § 2680(h). Dorking then filed for leave to amend the complaint under Federal Rule of Civil Procedure 15(a) to state that the United States breached a separate duty to prevent the export of cattle exposed to certain diseases. Finding the proposed amended claim barred by the discretionary-function exception to the FTCA, 28 U.S.C. § 2680(a); *United States v. Gaubert*, 499 U.S. 315, 322–25, 111 S.Ct. 1267, 1273–75, 113 L.Ed.2d 335 (1991), the district court denied the motion as futile. On appeal, Dorking argues that the denial of the motion to amend was error because breach of the duty to prohibit the export of cattle exposed to bovine leucosis was distinct from the tort of misrepresentation and was not covered by the discretionary-function exception. Although we agree with Dorking that its action is not barred by the misrepresentation exception, we hold that the breach of such a duty, assuming it existed, is not cognizable under the FTCA. Thus, the district court properly dismissed Dorking's claim against the United States for lack of subject matter jurisdiction. Therefore, we do not reach the question of whether Dorking's claim would also be barred on the ground that the decision to prohibit export of cattle exposed to bovine leucosis is a "discretionary function" under 28 U.S.C. § 2680(a).

### A. *Misrepresentation Exception*

Congress has specified that its waiver of sovereign immunity in § 1346(b) of the FTCA does not apply to "[a]ny claim arising out of ... misrepresentation." 28 U.S.C. § 2680(h). This exception "applies to claims arising out of negligent, as well as intentional, misrepresentation." *Block v. Neal*, 460 U.S. 289, 295, 103 S.Ct. 1089, 1092, 75 L.Ed.2d 67 (1983). The misrepresentation exception bars not only claims of negligence in the misrepresentation, but in the conduct underlying the misrepresentation. *United States v. Neustadt*, 366 U.S. 696, 706–07, 81 S.Ct. 1294, 1300, 6 L.Ed.2d 614 (1961); *Anglo–American & Overseas Corp. v. United States*, 242 F.2d 236, 237 (2d Cir.1957) (denying claim for damages from destruction of tomato paste imported in reliance on import "release notices" issued by the Food and Drug Administration); *Jones v. United States*, 207 F.2d 563 (2d Cir.1953) (denying claim for damages from government's negli-

gent estimate of the oil-producing capacity of land), *cert. denied,* 347 U.S. 921, 74 S.Ct. 518, 98 L.Ed. 1075 (1954). A plaintiff may not by artful pleading avoid the statutory exceptions to the FTCA. "In determining the applicability of the § 2680(h) exception, a court must look, not to the theory upon which the plaintiff elects to proceed, but rather to the substance of the claim which he asserts." *Lambertson v. United States,* 528 F.2d 441, 443 (2d Cir.), *cert. denied,* 426 U.S. 921, 96 S.Ct. 2627, 49 L.Ed.2d 374 (1976).

■ Recovery is not barred by the misrepresentation exception of § 2680(h), however, if the plaintiff alleges the breach of a cognizable duty owed to him which is "distinct from any duty to use due care in communicating information." *Block,* 460 U.S. at 297, 103 S.Ct. at 1093. In *Block,* the plaintiff received a Farmers Home Administration ("FmHA") loan for a prefabricated house. The contract with the builder required that the house conform to FmHA standards and be subject to FmHA inspection and testing. *Id.* at 291, 103 S.Ct. at 1090. After the house was built, an FmHA inspector approved it. *Id.* at 292, 103 S.Ct. at 1091. The plaintiff later discovered numerous construction flaws and failures to conform to FmHA standards. She sued the government for its negligent inspections. The Supreme Court found that, although the misrepresentation exception barred suit for breach of the duty to use care in obtaining and communicating information, a tort action might lie if Tennessee law provided for suit for breach of a Good Samaritan duty. *Id.* at 294–95, 103 S.Ct. at 1092. The plaintiff could prevail on such a claim if she could prove that the FmHA undertook to supervise the construction of her home and did so negligently. *Id.; see also National Carriers, Inc. v. United States,* 755 F.2d 675 (8th Cir.1985) (holding that USDA agent's negligent failure to identify and tag beef exposed to ditchwater after trucking accident was distinct from negligent misrepresentation that separation of exposed and unexposed beef was unnecessary); *Jimenez–Nieves v. United States,* 682 F.2d 1 (1st Cir.1982) (Breyer, J.) (holding that dishonoring of benefit checks by Social Security Administration was distinct from agency employee's misrepresentation which caused the

check to be dishonored); *Ware v. United States,* 626 F.2d 1278, 1283 (5th Cir.1980) (holding that negligence of government in destroying cattle it misdiagnosed as tubercular was distinct from negligent representation that the cattle were diseased).

### B. *Duty to Prohibit Export*

Dorking alleges that the government had a distinct duty to prohibit export of diseased cattle, which arises from two sources: (1) 21 U.S.C. § 105, and (2) the government's voluntary compliance with Zimbabwean health requirements and its undertaking to prohibit the exportation of cattle originating from a herd with a history of bovine leucosis.

In pertinent part, 21 U.S.C. § 105 provides,

> The Secretary of Agriculture may cause inspection to be made of all animals described in [§§ 101 to 104] intended for exportation, and provide for the disinfection of all vessels engaged in the transportation thereof ... and if, upon such inspection, any such animals shall be adjudged, under the regulations of the Secretary of Agriculture, to be infected or to have been exposed to infection so as to be dangerous to other animals, the Secretary may prohibit or restrict their placement upon any vessel for exportation.

Dorking claims that the federal government made the determination that exposure to bovine leucosis is "dangerous to other animals," in part by adopting the Zimbabwean herd history requirements in its origin health certificates. Therefore, in its view, the government owed foreign purchasers of livestock a duty under § 105 to bar the export of the three diseased heifers that ultimately caused Dorking's herd to be slaughtered. Moreover, Dorking claims that the government's voluntary incorporation of the Zimbabwean health requirements into its export regime created a Good Samaritan duty to prohibit the export of cattle exposed to bovine leucosis.

■ Although a duty to prohibit export may be distinct from a duty to represent the cattle's herd history accurately, Dorking has not stated a claim cognizable under the

FTCA. The FTCA does not create new causes of action, but only waives immunity under circumstances that would create liability "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. "[T]he test established by the Tort Claims Act for determining the United States' liability is whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred." *Rayonier Inc. v. United States,* 352 U.S. 315, 319, 77 S.Ct. 374, 376, 1 L.Ed.2d 354 (1957). The government is not limited to the liability assigned to municipal corporations under common law, nor is it insulated from FTCA liability simply because the negligence was committed in the performance of a uniquely governmental function. *Indian Towing Co. v. United States,* 350 U.S. 61, 65–69, 76 S.Ct. 122, 124–26, 100 L.Ed. 48 (1955) (holding that government's negligence in operating a lighthouse, although a governmental function, is cognizable since it is similar to the common law Good Samaritan duty to exercise due care in warning others of danger). However, "for liability to arise under the FTCA, a plaintiff's cause of action must be 'comparable' to a 'cause of action against a private citizen' recognized in the jurisdiction where the tort occurred, and his allegations, taken as true, must satisfy the necessary elements of that comparable state cause of action." *Chen v. United States,* 854 F.2d 622, 626 (2d Cir.1988) (citations omitted).

Therefore, assuming that § 105 did impose a duty on the government to prohibit export of cattle exposed to bovine leucosis and that such a duty was owed to foreign purchasers of cattle, Dorking's claim for damages would still not be cognizable under the FTCA. "The FTCA's 'law of the place' requirement is not satisfied by direct violations of the Federal Constitution or of federal statutes or regulations standing alone." *Id.* (citations omitted); *cf. Meyer,* —— U.S. at ——, 114 S.Ct. at 1001 (holding constitutional torts not cognizable because "[b]y definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right"). There must, in addition, be a breach of duty under the law of New York.[1]

■■■ We therefore look to the law of New York to determine whether Dorking has stated a cognizable claim against the United States. New York does not recognize a duty of private actors to prohibit export of diseased cattle. Indeed, it is hard to imagine how state law could recognize a duty of a private person to stop international commercial transactions, the regulation of which is reserved exclusively to the federal government. "The FTCA does not extend to conduct 'governed exclusively by federal law....'" *Akutowicz v. United States,* 859 F.2d 1122, 1125 (2d Cir.1988) (quoting *Feres,* 340 U.S. at 146) (finding withdrawal of a person's citizenship to have no private analog); *C.P. Chem. Co. v. United States,* 810 F.2d 34, 37 (2d Cir.1987) ("[A]s to certain governmental functions, the United States cannot be held liable, for no private analog exists.").[2]

1. Both Dorking and the government assume that New York is the place where the alleged breach of the duty to export occurred, ostensibly because the USDA veterinarian, Dr. Toms, was in Albany, New York when he certified the health certificate prepared by Dr. Evans. We therefore assume for purposes of this appeal that for the duty to be cognizable it must have a private-party analog under New York law.

2. We have yet to decide whether it would be sufficient under the FTCA for a plaintiff to prove breach of a federal statutory duty if the state where the breach took place recognized the doctrine of negligence per se. *Cf. Chen,* 854 F.2d at 627 ("In New York, the 'unexcused omission' or violation of a duty imposed by statute for the benefit of a particular class 'is negligence itself ...'") (quoting *Martin v. Herzog,* 228 N.Y. 164, 168, 126 N.E. 814 (1920)). In two cases in which the issue arose, we disposed of the claim on other grounds. *See Mann v. United States,* 904 F.2d 1, 2 (2d Cir.1990) (per curiam) (no violation of federal statute); *Chen,* 854 F.2d at 627 (2d Cir.1988) (violation of administrative regulations is not negligence per se under New York law). We note that the Fifth Circuit recently cast doubt on whether such a claim would be cognizable under the FTCA. *Johnson v. Sawyer,* 47 F.3d 716, 728–29 (5th Cir.1995) (in banc). We need not address this question today because Dorking does not raise the issue of negligence per se on appeal; moreover, as noted above, § 105 is not a statute which places a duty on any private actor. Because a private actor could not be held liable on a negligence per se theory under state law, New York's recognition of negli-

■ Dorking argues, however, that its claim is analogous to a claim for breach of the Good Samaritan duty. The elements of a Good Samaritan claim are determined by state law. *See United States v. Varig Airlines*, 467 U.S. 797, 815 n. 12, 104 S.Ct. 2755, 2765 n. 12, 81 L.Ed.2d 660 (1984); *Block*, 460 U.S. at 294, 103 S.Ct. at 1092. New York recognizes the Good Samaritan tort of negligence in performance of a duty that would not exist were it not for the tortfeasor's voluntary undertaking.

The formula for determining when "one who assumes a duty to act, even though gratuitously, may thereby become subject to the duty of acting carefully" has been articulated by Chief Judge Cardozo as follows: "If conduct has gone forward to such a state that inaction would commonly result, not negatively merely in withholding a benefit, but positively or actively in working an injury, there exists a relation out of which arises a duty to go forward.... The query always is whether the putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm, or has stopped where inaction is at most a refusal to become an instrument for good."

*Nallan v. Helmsley–Spear, Inc.*, 50 N.Y.2d 507, 522, 429 N.Y.S.2d 606, 615, 407 N.E.2d 451, 459 (1980) (quoting *H.R. Moch Co. v. Rensselaer Water Co.*, 247 N.Y. 160, 167–68, 159 N.E. 896 (1928)).

■ A variant of Good Samaritan liability arises when the defendant is negligent in performing an undertaking for the benefit of a third party and the plaintiff is injured thereby. This form of liability, which is recognized in New York, *Miller v. Rivard*, 180 A.D.2d 331, 337, 585 N.Y.S.2d 523, 527 (3d Dep't.1992), is explained in *Restatement (Second) of Torts* § 324A (1965):

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Dorking argues that its FTCA claim is brought under the principles of New York law analogous to subsection (c) of the Restatement. In its reply brief, Dorking argues that "when the Government undertook to comply with Zimbabwe's health requirements in conducting its regulatory inspection ..., it undertook a Good Samaritan duty under § 324A of the Restatement to carry out its duties in a nonnegligent manner, and [Dorking] relied on the Government to conduct its services properly."

We do not think Dorking has stated a claim that would be cognizable under the New York common law of Good Samaritan liability. As Dorking seems to realize, it would not be enough to claim that the United States undertook a duty to Zimbabwe authorities to certify that exported cattle met that country's health requirements; any negligence in that representation, or in the inspections that underlay that certification, would not be cognizable under the misrepresentation exception of 28 U.S.C. § 2680(h). *See Anglo–American*, 242 F.2d at 237. Dorking cannot circumvent that exception by recasting its pleading in Good Samaritan terms; it must allege a duty "distinct from any duty to use due care in communicating information." *Block*, 460 U.S. at 297, 103 S.Ct. at 1093.

As best as we can discern from its arguments, Dorking is claiming that the United States undertook a distinct duty to the Zimbabwean government to prohibit export of cattle which did not meet that country's health requirements, and Dorking suffered because of its reliance or its government's reliance upon the undertaking. Even assuming that Dorking could somehow prove reliance, which we doubt, it still has failed to

gence per se would not in any event make this     claim cognizable under the FTCA.

state a claim cognizable under New York law.

First, to incur Good Samaritan liability the government must be negligent in its actual performance of the undertaking. *World Trade Knitting Mills v. Lido Knitting Mills,* 154 A.D.2d 99, 107, 551 N.Y.S.2d 930, 936 (2d Dep't 1990) (distinguishing misfeasance and nonfeasance). As a matter of law, Dorking's allegations, taken as true, are insufficient to demonstrate negligence. The government itself has no duty to carry out inspections of cattle. Section 105 specifically provides that the USDA "may cause inspection to be made" of animals intended for export, not that the USDA shall inspect cattle. The USDA regulations place the burden of inspection on the exporter. Those regulations require all animals intended for export to have an Origin Health Certificate endorsed by an authorized veterinarian. The certificate "shall certify that the animals were inspected within the 30 days prior to the date of the movement of the animals for export, and were found to be healthy and free from evidence of communicable disease and exposure thereto." 9 C.F.R. § 91.3(a). Any negligence that occurred in this case was caused by Dr. Evans. There is no allegation in the complaint that Dr. Toms was under any obligation to conduct an independent inquiry into the herd history of the cattle. Even construing Dorking's complaint in its favor, we find that Dr. Toms's duty did not extend beyond certifying that the health certificate was properly completed and that its representations were supported by the blood tests. Dorking makes no claim that the blood tests showed the heifer's exposure to bovine leucosis and should have been detected by Dr. Toms. Presented with an Origin Health Certificate representing the sound condition of the heifers, the government was not negligent as a matter of law in failing to prohibit their export.

Second, even if Dorking could prove that the United States government was negligent in performing the duty it allegedly owed to Zimbabwean authorities to prohibit the export of cattle exposed to leucosis, Dorking's allegations of reliance are insufficient as a matter of law. Under § 324A(c) of the *Re-statement,* liability arises if the plaintiff suffers harm "because of reliance of the other [Zimbabwe] or the third person [Dorking]" upon the negligently performed undertaking.

Dorking cannot prove such reliance. Dorking cannot claim that the harm it suffered resulted from Zimbabwe's reliance on the alleged undertaking, perhaps in the form of abandonment of its own import-inspection program. To the contrary, the Zimbabwean Import Permit for the three heifers, which was submitted in the record on appeal, specifically requires that "[t]he time of arrival of the animals must be timeously advised to the Director of Veterinary Services so that inspection of the animals can be arranged." Thus, Zimbabwe has not dispensed with its inspection program in reliance on the United States' prohibition of the export of infected cattle. Moreover, Zimbabwe does not rely solely on the health certificate from the United States, but requires its own separate health certificate (which addresses infection with bovine leucosis) to be executed. There is thus nothing in the complaint or supporting documents that leads us to believe that Dorking could prove Zimbabwe's reliance on the United States' undertaking. Moreover, although it duly claims in conclusory terms its own "reliance" on the United States' assumption of duty, Dorking does not allege that it took, or declined to take, any action in reliance on the United States' performance of its duty, i.e., that it would have done anything other than what it in fact did (arrange for a private veterinarian to certify the herd's compliance with Zimbabwe's health requirements) if the United States had not promised to bar the export of cattle exposed to bovine leucosis. Absent any reliance, Dorking has at most alleged that it suffered harm because the United States withheld the benefit of prohibiting the export of the infected cattle, but merely "withholding a benefit" does not create Good Samaritan liability. *Nallar,* 50 N.Y.2d at 522, 429 N.Y.S.2d at 615, 407 N.E.2d at 459.

Because Dorking's allegations fail to satisfy the necessary elements of a New York cause of action for breach of an assumed duty, we hold that Dorking has failed to state

a cognizable claim under the FTCA. *See Chen*, 854 F.2d at 626.

## II. *Dorking's Malpractice Claim Against Dr. Evans*

■ In Count III of its complaint, Dorking asserted a claim of "breach of contract for malpractice" against Dr. Evans, the veterinarian who was hired by the seller, Mansion Valley, to examine the heifers sold to Dorking. Although Dorking captions Count III as "breach of contract" and in places uses language that would suggest a contractual theory of recovery, we, like the district court, construe the complaint as stating a claim of negligence. The fact that the alleged relationship between Dorking and Dr. Evans arose out of contract does not bar Dorking from pursuing a claim of negligence. "Negligent performance of a contract may give rise to a claim sounding in tort as well as one for breach of contract. The two claims may be submitted as alternatives to the jury, as a matter of both New York substantive law and federal procedural law." *Ajax Hardware Mfg. Corp. v. Industrial Plants Corp.*, 569 F.2d 181, 185 (2d Cir.1977) (citations omitted); *see Sears, Roebuck & Co. v. Enco Assocs.*, 43 N.Y.2d 389, 398, 401 N.Y.S.2d 767, 772, 372 N.E.2d 555, 559 (1977) ("On the issue of liability, proof will be admissible to establish either breach of a particular term or provision of the contract or failure to use due professional care in the performance of the [professional's] obligations under the contract."). A negligence claim may be brought provided that the plaintiff alleges that "a legal duty independent of the contract itself has been violated." *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 656–57, 516 N.E.2d 190, 192–94 (1987). The allegation that Dr. Evans violated standards of professional care as a veterinarian in performing his contractual obligations suffices in that regard. *Cf. Sears*, 43 N.Y.2d at 398, 401 N.Y.S.2d at 772, 372 N.E.2d at 559 (violation of architect's duty of care).

■ On a motion by Dr. Evans under Federal Rule of Civil Procedure 12(b)(6), the district court dismissed Dorking's malpractice claim because Dorking did not have a "bond [with Dr. Evans] 'so close as to approach that of privity,' " *Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson*, 73 N.Y.2d 417, 425, 541 N.Y.S.2d 335, 339, 539 N.E.2d 91, 94 (1989) (quoting *Ultramares Corp. v. Touche*, 255 N.Y. 170, 182–83, 174 N.E. 441, 446 (1931)). We review *de novo* a dismissal under Rule 12(b)(6) and will affirm the dismissal "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Citibank, N.A. v. K–H Corp.*, 968 F.2d 1489, 1494 (2d Cir.1992).

In *Ossining*, the New York Court of Appeals addressed the privity requirement under New York law. After surveying the deterioration of "the citadel of privity" in this century, the court concluded that a defendant could be held liable for negligent misrepresentation if a plaintiff shows: "(1) awareness that the reports were to be used for a particular purpose or purposes; (2) reliance by a known party or parties in furtherance of that purpose; and (3) some conduct by the defendants linking them to the party or parties and evincing defendant's understanding of their reliance." *Ossining*, 73 N.Y.2d at 425, 541 N.Y.S.2d at 339, 539 N.E.2d at 94 (citing *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 551, 493 N.Y.S.2d 435, 443, 483 N.E.2d 110, 118 (1985)).

The district court ruled that Dorking's complaint failed to satisfy the second and third *Ossining* factors. On the second factor of reliance, the district court reasoned that there was no reliance because Dorking already knew that three other heifers from the herd had already tested positive for leucosis antibodies. Moreover, it determined that the " 'end aim' of [Dr. Evans] services was in furtherance of a public purpose—to verify to the government, not [Dorking], that the heifers were healthy." The district court declined to impose a duty to Dorking on Dr. Evans when the government owed no such duty.

■ We cannot say, in review of a dismissal under Rule 12(b)(6), that Dorking can prove no set of facts evincing reliance. As admitted in the complaint, Dorking did know

that three other Mansion Valley heifers had tested positive for leucosis. In defense of his certification, however, Dr. Evans concedes that a positive blood test is not the equivalent of having the disease of bovine leucosis. Therefore, Dorking did not necessarily know from the previous blood tests that the herd had a history of leucosis. If other factors must be considered in determining whether a herd has a history of leucosis, we cannot see why as a matter of law Dorking could not reasonably rely on Dr. Evans to exercise due care in making that certification. It does not matter, as Dr. Evans contends, that Dorking could have gathered the information on herd history itself; Dr. Evans contracted to make all determinations required in the Origin Health Certificate, and there is no reason why Dorking should have had to replicate his work.

We also cannot say that no duty of Dr. Evans arose to Dorking because his services had both a private and public purpose and because the government owed Dorking no duty. Surely, any duty here would be no different from a duty to a stock issuer that an accountant or corporate lawyer might face for the negligent preparation of a prospectus required by the Securities and Exchange Commission, even if the prospectus primarily served the public purpose of safeguarding potential shareholders. Moreover, the reason the government owes no duty kindred to that Dr. Evans might owe to Dorking is that the government did not contract or otherwise assume a duty to inspect the heifers, and, even if it did, it would have the benefit of the misrepresentation exception of 28 U.S.C. § 2680(h) for any negligence in an inspection leading to an erroneous certification. Neither reason applies to Dr. Evans or justifies dismissal of Dorking's claim on the basis of lack of reliance.

The district court also found that there was no conduct by Dr. Evans "linking" him to Dorking under the third *Ossining* factor. The district court interpreted *Ossining* to require some "conduct that is interactive with the plaintiff and tends to demonstrate the defendants' awareness of plaintiff's specific reliance." We do not think that the Court of Appeals intended the term "linking

conduct" to be read so narrowly. In *Credit Alliance Corp. v. Andersen & Co.,* 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985), a case which preceded *Ossining,* the Court of Appeals considered "direct dealings" as but one of several factors that might establish a relationship sufficiently close to privity:

> While the allegations state that [the contracting party] sought to induce plaintiffs to extend credit, no claim is made that [defendant] Andersen was being employed to prepare the reports with that particular purpose in mind. Moreover, there is no allegation that Andersen had any direct dealings with plaintiffs, had specifically agreed with Smith to prepare the report for plaintiffs' use *or according to plaintiffs' requirements,* or had specifically agreed with Smith to provide plaintiffs with a copy or actually did so. Indeed, there is simply no allegation of any word or action on the part of Andersen directed to plaintiffs, or anything contained in Andersen's retainer agreement with Smith which provided the necessary link between them.

65 N.Y.2d at 553–54, 493 N.Y.S.2d at 444, 483 N.E.2d at 119 (emphasis added). Thus, the court seemed to imply that an action could be brought by plaintiffs if the contract for services was tailored to the plaintiffs' requirements (thus demonstrating that the defendant understood the plaintiffs' reliance) even if the plaintiffs had never interacted directly with the defendant.

Moreover, in *Credit Alliance* the Court of Appeals was careful to say that the three factors of awareness, reliance, and linking conduct "do not represent a departure from the principles articulated in [our previous cases] but, rather, they are intended to preserve the wisdom and policy set forth therein." 65 N.Y.2d at 551, 493 N.Y.S.2d at 443, 483 N.E.2d at 118. One of the cases cited by the Court of Appeals was *Glanzer v. Shepard,* 233 N.Y. 236, 135 N.E. 275 (1922), in which that court allowed a buyer of beans to bring a negligence cause of action against public weighers of beans. If a buyer of beans can sue a defendant hired by the seller for negligent certification of the weight of the beans, we are reluctant to say that as a matter of law a buyer of cattle cannot under

any facts sue a defendant hired by the seller for negligent certification of the medical condition of the cattle. Thus, it is enough if the complaint shows "reliance by the plaintiff that was 'the end and aim of the transaction.'" *Ossining,* 541 N.Y.S.2d at 339, 539 N.E.2d at 94 (quoting *Glanzer,* 233 N.Y. at 238–39, 135 N.E. 275); *see also Eiseman v. State,* 70 N.Y.2d 175, 188, 518 N.Y.S.2d 608, 614, 511 N.E.2d 1128, 1134 (1987) (finding physician who prepared medical report on a student for a college did not owe duty to parents and estate of person raped and murdered by that student: "In completing [a medical] report, the physician plainly owe[s] a duty of care to his patient and to persons he knew or reasonably should have known were relying on him for this service to his patient."); *Kidd v. Havens,* 171 A.D.2d 336, 339, 577 N.Y.S.2d 989, 991 (4th Dep't 1991) (holding a purchaser of real property entitled to bring a third-party action against a title company to recover damages for alleged negligence in failing to report a mortgage before certifying title).

It is apparent to us that Dorking can prove facts establishing a relationship approximating privity, and therefore the district court's dismissal of the claim on a Rule 12(b)(6) motion was improper. It would be inappropriate for us to say more, heeding as we do the admonition of the Court of Appeals that "[t]he right of a third person to recover upon a contract made by other parties for his benefit must rest upon the peculiar circumstances of each case rather than upon the law of some other case." *Seaver v. Ransom,* 224 N.Y. 233, 241, 120 N.E. 639, 641 (1918) (discussing contract claims of third-party beneficiaries). The complaint gives us little insight into the circumstances of the contract, and Dr. Evans may of course ask the district court to revisit this issue on summary judgment after discovery. But if the contract was tailored to meet Dorking's requirements, *cf. Credit Alliance,* 65 N.Y.2d at 553–54, 493 N.Y.S.2d at 444, 483 N.E.2d at 119, and thus Dorking's reliance on Dr. Evans's services was within the contemplation of the parties to the contract, Dorking is entitled to bring this cause of action.

## CONCLUSION

We affirm the dismissal of Dorking's claims against the United States and the denial of the motion to amend the complaint, reverse the dismissal of Dorking's claim against Dr. Evans, and remand for further proceedings.