Christina **LEMKE**, an infant, by her father and natural guardian, Edward **LEMKE**, and Edward Lemke, individually, Plaintiffs,

v.

The **CITY OF PORT JERVIS**, the United States Department of Agriculture, the United States Rural Economic Development Agency, f/k/a Farmers Home Administration, **C & D Power Systems, Inc.**, a/k/a **C & D Battery**, and **Smith Plumbing & Heating, Inc.**, Defendants.

No. 96 CIV. 5276 (BDP).

United States District Court, S.D. New York.

Jan. 12, 1998.

Jeffrey Joseph Rea, New York, NY, for Plaintiff.

Lisa L. Gollihue, O'Connor & O'Connor LLP, White Plains, NY, for Defendant City of Port Jervis.

Jonathan A. Willens, Asst. U.S. Atty., U.S. Attorney's Office, New York, NY, for Defendants United States Department of Agriculture, United States Rural Economic Development Agency, f/ka Farmers Home Administration.

Monte J. Rosenstein, Rosenstein, McKenna & Bonney, Middletown, NY, for Defendant·Smith Plumbing & Heating, Inc.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

### INTRODUCTION

This suit arises from the government financed purchase and occupancy by plaintiff Edward Lemke and his wife, Gina Lemke, of a house at 48 Hudson Street in Port Jervis, New York. Subsequent to the Lemkes' purchase of the home in 1991, the house was found to contain high levels of lead, which allegedly caused personal injury to the Lemkes' daughter, Christina, who was born in 1993.

Plaintiffs have filed suit against the United States Department of Agriculture and its agency, the United States Rural Economic Development Agency (collectively, the "government defendants") under the Federal Tort Claims Act, 28 U.S.C. § 1346 *et seq.* The government defendants have moved for summary judgment pursuant to Fed.R.Civ.P. 56.[1] For the reasons that follow, the government defendants' motion for summary judgment is denied.

### FACTUAL BACKGROUND

The Lemkes purchased the home at 48 Hudson Street in August 1991 with the aid and assistance of the United States Rural Economic Development Agency (then known as the Farmers Home Administration), which financed the purchase by extending a Rural Housing Program loan authorized by § 502 of the Housing Act of 1949. 42 U.S .C. § 1472 *et seq.*

The Farmers Home Administration (the "Administration") advised the Lemkes that any house they selected would be subject to inspection by and approval of the Administration in order to insure that the house was adequate for the family and met applicable Administration standards, including suitability requirements. After the Lemkes located a house, a representative of the Administration visually inspected the entire house in May 1991 and approved it for the Section 502 loan program. According to the Administration representative who inspected the house, if a premises contained extensive lead plumbing it was clearly unsuitable for the Section 502 loan program. The house was approximately 90 years old and was constructed during a period in which many homes contained lead plumbing and lead-based paint. The property's lead plumbing was clearly visible to a person with a basic knowledge of plumbing.

In April 1992, the Administration representative who had inspected the property was informed that the house contained lead plumbing. After being advised repeatedly that Christina Lemke had dangerously high levels of lead in her blood and, as a result, had suffered substantial developmental difficulties, the Administration conducted tests for lead contamination. In April 1995, after receiving the results of these tests, the Administration determined that the home was unfit for occupancy and advised the Lemke family to vacate immediately.

In December 1995, the Lemkes filed a Notice of Claim against the government defendants under the Federal Tort Claims Act. This action followed.

### DISCUSSION

A motion for summary judgment should only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Hayes v. New York City Department of Corrections,* 84 F.3d 614, 619 (2d Cir.1996); *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). This Court's responsibility is to perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *McNeil v. Aguilos,* 831 F.Supp. 1079, 1082

---

1. The government defendants have also moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Because this motion is accompanied by a variety of affidavits and other documentation it will be analyzed as a Rule 56 motion for summary judgment.

(S.D.N.Y.1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *Hayes,* 84 F.3d at 619.

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities in the light most favorable to, and draw all reasonable inferences in favor of, the party opposing the motion. *Wernick v. Federal Reserve Bank of New York,* 91 F.3d 379, 382 (2d Cir.1996); *In re State Police Litigation,* 88 F.3d 111, 123 (2d Cir. 1996).

In this case, the government defendants contend that plaintiffs' claims are barred by the misrepresentation and discretionary function exceptions to the Federal Tort Claims Act. 28 U.S.C. §§ 2680(a) and 2680(h). Additionally, the government defendants contend that plaintiffs' claims are not actionable under New York State law, which must provide a cause of action if plaintiffs are to state a claim under the Federal Tort Claims Act. 28 U.S.C. § 1346(b); *FDIC v. Meyer,* 510 U.S. 471, 482–83, 114 S.Ct. 996, 1004, 127 L.Ed.2d 308 (1994); *Dorking Genetics v. United States,* 76 F.3d 1261, 1266 (2d Cir.1996).

■ The misrepresentation exception to the Federal Tort Claims Act precludes any claim against the government "arising out of . . . misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). This exception encompasses "claims arising out of negligent, as well as willful, misrepresentation." *United States v. Neustadt,* 366 U.S. 696, 702, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961). The misrepresentation exception also bars claims based on the conduct underlying the misrepresentation. *Dorking Genetics,* 76 F.3d at 1264 (citations omitted). Thus, a claim based on negligent conduct that results in a misrepresentation is not actionable under the FTCA. *Neustadt,* 366 U.S. at 760–707.

■ The misrepresentation exception, however, "does not bar negligence actions which focus not on the Government's failure to use due care in communicating information, but rather on the Government's breach of a different duty." *Block v. Neal,* 460 U.S.

289, 297, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983). A claim that is "distinct from any duty to use due care in communicating information" is not barred by the misrepresentation exception. *Block v. Neal,* 460 U.S. at 297.

■ In this case, the government defendants contend that the essence of plaintiffs' claim is that the government did not use due care in obtaining and communicating information about the lead plumbing in the house the Lemkes purchased. If this were the gravamen of plaintiffs' claim, then indeed it would be barred by the misrepresentation exception. *Neustadt,* 366 U.S. at 702. But the essence of plaintiffs' claim is that not the government provided misinformation or failed to provide information. Rather, the core of plaintiffs' claim is that the government, having voluntarily assumed the responsibility to inspect the house, conducted an inspection in a manner that failed to identify unconcealed characteristics of the property that made it, according to government's own inspector, unsafe for occupancy and unsuitable for the Section 502 loan program. If the lead plumbing had been recognized, the proper course, according to the government's own inspector, would have been to declare the house unsuitable for the Section 502 loan program because it was unsafe for occupancy. The claim that the government breached this duty is distinct from any misrepresentation claim that the plaintiffs might also have sought to assert. Indeed, if the government had a duty, in these circumstances, to declare the house unsuitable for the Section 502 loan program, that duty could have existed separate and apart from any duty to use due care in obtaining and communicating information.

The government defendants also assert that plaintiffs' claim is barred by the discretionary function exception to the Federal Tort Claims Act. The discretionary function exception bars "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal

agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

■■■ In order for the government to be insulated from liability under the discretionary function exception, the challenged acts must involve "an element of judgment or choice." *United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (internal quotations and citations omitted). Additionally, the challenged conduct must be "based on considerations of public policy." *Gaubert,* 499 U.S. at 323 (quotations omitted). "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert,* 499 U.S. at 324. In order for a claim not to be precluded by the discretionary function exception, it must involve "facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Gaubert,* 499 U.S. at 324–325.

■■ In this case, the government contends that the process and standards utilized in evaluating a property for participation in the Section 502 loan program involve the exercise of discretion and are based on policy considerations. The government is certainly correct that the policy decision not to inspect for lead every house considered for the Section 502 loan program is within the ambit of the discretionary function exception. The government may establish or not establish an inspection policy as it sees fit. Having established a policy that mandates the inspection of houses considered for the Section 502 loan program, the government is also free to set standards for safety and suitability. *United States v. S.A. Empresa de Viacao Aerea Rio Grandense,* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). The conduct of administration representatives in inspecting homes also comes within the discretionary function exception insofar as the conduct is "grounded in the policy of the regulatory regime." *Gaubert,* 499 U.S. at 325. The conduct must be "based on considerations of public policy."

*Gaubert,* 499 U.S. at 325 (quoting *Berkovitz v. United States,* 486 U.S. 531, 537, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)).

The plaintiffs' claim, however, does not challenge any policy determination or any inspection decision made in furtherance of any governmental policy. Rather, the plaintiffs' claim is that, having determined to inspect homes in order to assess their suitability for the Section 502 loan program, and having defined safety as one element of suitability, the government's failure to detect clearly apparent conditions that made the home unsafe, and therefore unsuitable for the Section 502 loan program, is not clearly "susceptible to policy analysis." *Andrulonis v. United States,* 952 F.2d 652, 655 (2d Cir. 1991). The inspector's decision not to obtain information that would have revealed the presence of lead plumbing does not implicate any policy consideration and, thus, does not warrant protection under the discretionary function exception. *See Andrulonis,* 952 F.2d at 655; *Indian Towing Company,* 350 U.S. at 69. The government's failure to identify harmful conditions present in the property cannot be understood as in furtherance of any governmental policy or as the exercise of discretion pursuant to any governmental policy. *See Andrulonis,* 952 F.2d at 655 (holding that a negligent omission did not "implicate any policy considerations and thereby warrant protection under the discretionary function exception").

■■ Finally, the government contends that plaintiffs are unable to state a claim under New York state law, as required for plaintiffs' claim to be cognizable under the Federal Tort Claims Act. 28 U.S.C. § 1346(b); *FDIC v. Meyer,* 510 U.S. 471, 114 S.Ct. 996, 1004, 127 L.Ed.2d 308 (1994). The government puts forth several bases for concluding that plaintiffs have not stated a claim under New York state law. First, the government notes that New York state law imposes no duty on lenders to inspect property for the benefit of borrowers. Thus, a negligent inspection by a lender may not give rise to liability. Second, the government asserts that disclaimers in the application materials received and completed by the Lemkes made clear that any inspections performed by gov-

ernmental agents were solely for the benefit of the government and that, in any event, the Lemkes waived any claims when they agreed to purchase the house in "as-is" condition. Finally, the government notes that New York state law does not recognize preconception torts and argues that the government owed no duty to Christina Lemke, who was not born when the Lemkes purchased the house in 1991.

It should be noted that in order to survive the government defendants' motion for summary judgment, the plaintiffs need only demonstrate the possibility that at trial they may be able to prove *a claim.* Notwithstanding the fact that under New York state law, lenders are not generally liable to borrowers for negligent inspections of properties purchased "as-is," the plaintiffs may be able to prove that the Farmers Home Administration breached a duty it owed to plaintiffs.[2] "New York recognizes the Good Samaritan tort of negligence in performance of a duty that would not exist were it not for the tortfeasor's voluntary undertaking." *Dorking Genetics,* 76 F.3d at 1267. Whether the Farmers Home Administration assumed any such duty toward the Lemkes rests on factual determinations that cannot be made on this motion for summary judgment. For example, the Court would have to determine, among other things, whether the Lemkes were led to rely on the inspection conducted by the government or on the Administration's determination of suitability, and then whether the Lemkes did so rely. Therefore, whether the plaintiffs may be able to prove a claim under New York state law depends on factual determinations that can only be made at trial.

This Court is unable to conclude that the plaintiffs will be able to prove no claim under New York State law or that the plaintiffs'

claims are precluded by either the misrepresentation or discretionary function exceptions to the Federal Tort Claims Act.

## CONCLUSION

For the reasons stated, the government defendants' motion is denied.

**SO ORDERED.**

---

2. The government's contention that New York law does not recognize preconception torts is correct, but beside the point. Plaintiffs do not assert a preconception tort, as defined in, for example, *Albala v. City of New York,* 54 N.Y.2d 269, 445 N.Y.S.2d 108, 429 N.E.2d 786 (1981) and *Enright v. Eli Lilly Company,* 77 N.Y.2d 377, 568 N.Y.S.2d 550, 570 N.E.2d 198 (1991). Specifically, plaintiffs do not claim that Christina Lemke suffered birth defects as a result of her mother's exposure to harmful conditions. Rath-

er, the plaintiffs' claim is that the government's tortious conduct caused to exist an unsafe condition that harmed Christina Lemke after her birth. The issue then is whether it was foreseeable that the Lemkes would give birth to a child who would be harmed by high levels of lead. *Palsgraf v. Long Island Railroad Co.,* 248 N.Y. 339, 162 N.E. 99 (1928). This determination is fact intensive and cannot be made on the present record, but rather must be made at trial.