**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 26, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MINOR JGE, 7 year old minor through
next friend Peter Tasso, Esq.; GABRIELA
GALLEGOS; JOLENE ESTRADA, in her
personal and official capacities as co-
personal representative of the estate of
Jason Julian Estrada; JOYCE ESTRADA,
in her personal capacity,

     Plaintiffs - Appellants,

v.

UNITED STATES OF AMERICA,

     Defendant - Appellee,

and

CHRISTOPHER SCOTT GODIER;
PATRICIA G. WHELAN, a/k/a Patricia
Yazzie, a/k/a Trish Yazzie; JOHN R.
CASTLEBERRY, Special Agent Drug
Enforcement Administration, in his
individual capacity; MATTHEW B.
MAYFIELD, Group Supervisor (GS) Drug
Enforcement Administration, in his
individual capacity; RAYMOND KEITH
BROWN, Assistant Special Agent in
Charge (ASAC) Drug Enforcement
Administration, in his individual capacity;
JOSEPH M. ARABIT, Special Agent in
Charge (SAC) Drug Enforcement
Administration, in his individual capacity,

     Defendants.
_____

No. 18-2092
(D.C. No. 1:14-CV-00710-MV-WPL)
(D. N.M.)

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MORITZ**, and **EID**, Circuit Judges.
_____

Plaintiffs brought this action against the United States under the Federal Tort

Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, and the individual

defendants under *Bivens v. Six Unknown Named Agents of Federal Bureau of

Narcotics*, 403 U.S. 388 (1971). The district court dismissed the individual

defendants and granted the United States' motion for judgment on the pleadings. It

then denied plaintiffs' Fed. R. Civ. P. 59(e) motion to alter or amend the judgment.

Plaintiffs appeal the denial of their Rule 59(e) motion. We have jurisdiction under

28 U.S.C. § 1291, and we affirm.

## BACKGROUND

The tragic facts of this case are described in plaintiffs' first amended

complaint. In 2012 and 2013 Edward Quintana molested JGE and murdered JGE's

father, Jason Julian Estrada. At the time Mr. Quintana took these actions he was

registered as a confidential informant for the Drug Enforcement Administration

(DEA).

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The events began in 2011, when Mr. Quintana was arrested by state authorities after a search warrant executed at his home uncovered drugs and stolen handguns. After his arrest and release from custody the DEA registered him as an active informant. He remained registered as an informant until April 4, 2013. As part of Mr. Quintana's agreement with the DEA the defendants "controlled the evidence and the status and direction of the State of New Mexico charges" against him. Aplt. App., Vol. I at 24 ¶ 83 (emphasis omitted). At the time the DEA engaged him as an informant, Mr. Quintana's criminal record reflected his violent propensities.[1]

In August 2012, during the period in which he was acting as an informant, Mr. Quintana and his family moved into the residence of Jason Estrada and his family, with the Estrada family's permission. Plaintiffs allege the DEA was aware or should have been aware of Mr. Quintana's residential location and circumstances. For its part, the Estrada family was unaware that Mr. Quintana was serving as a DEA informant. Nor did the government warn the family of his violent nature or history.

Within a month, Mr. Quintana began sexually abusing Jason Estrada's minor son, JGE, who was then five years old. The abuse continued until February 20, 2013, when Mr. Quintana and his family moved out of the Estrada residence.

---

[1] Mr. Quintana's criminal record includes "Domestic Violence, Battery upon a Household Member, Child Abuse, False Imprisonment, Battery upon a Household Member with a Firearm, Attempted Murder, Kidnapping, Conspiracy, Felon in Possession of a Firearm . . . Trafficking a Controlled Substance, Receiving or Transferring a Stolen Firearm, and threats of Battery and Arson." Aplt. App., Vol. I at 33-34 ¶ 146.

3

Several weeks later, JGE informed his parents about the molestation. Jason Estrada sought information from mutual friends and associates of Mr. Quintana about Mr. Quintana's abusive behavior toward his son. Mr. Quintana apparently learned of Mr. Estrada's inquiries. On April 3, 2013, Mr. Quintana and two other men travelled to the Estrada residence. In the presence of JGE, they beat and shot Jason Estrada, who died from his injuries. Approximately one day later, "the United States and the Defendants deactivated DEA Informant Edward Quintana." *Id.* at 33 ¶ 141.

Plaintiffs thereafter brought this action against the United States and the individual DEA defendants. The district court granted the individual defendants' motion to dismiss based on qualified immunity. It further determined the FTCA claims should be dismissed because plaintiffs had failed to identify an analogous duty under New Mexico law that would require a private person under comparable circumstances to protect plaintiffs from the harms they experienced from Mr. Quintana. Among other points, the district court reasoned that "Plaintiffs' existence and harm were not reasonably foreseeable to the DEA," *id.*, Vol. II at 483, and "the DEA could not have reasonably foreseen the terrible tragedy that befell Plaintiffs, and so could not have imposed any conditions on Quintana's activities that would have limited his contact with the Estrada family," *id.* at 484.

Plaintiffs filed a motion under Fed. R. Civ. P. 59(e) to alter or amend the judgment, reasoning that New Mexico imposes a duty to protect others from harm even in the absence of foreseeability, when the duty arises from a special

4

relationship. After obtaining supplemental briefing on that issue, the district court denied the motion.

## DISCUSSION

Plaintiffs' notice of appeal designates only the district court's order denying their Rule 59(e) motion. Aplt. App., Vol. 3 at 633. This court's appellate jurisdiction therefore extends only to review of that order. *See* Fed. R. App. P. 3(c)(1)(B).

In reviewing the district court's denial of a Rule 59(e) motion, we ordinarily seek to determine whether the district court abused its discretion, in light of Rule 59(e)'s function "to correct manifest errors of law or to present newly discovered evidence." *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997). Under the circumstances of this appeal, however, we find it unnecessary to conduct that inquiry. Even if we were to find an abuse of discretion, a remand for further proceedings would be futile because plaintiffs have failed to satisfy their burden to establish the existence of subject-matter jurisdiction over this dispute. The parties have fully briefed this alternative jurisdictional issue both here and in the district court and "we have an independent obligation to determine whether subject-matter jurisdiction exists." *Collins v. Daniels*, 916 F.3d 1302, 1314 (10th Cir. 2019) (internal quotation marks omitted).

In district court, the government challenged the district court's subject-matter jurisdiction on two grounds: (1) plaintiffs failed to demonstrate analogous tort liability under New Mexico state law, as required by 28 U.S.C. § 1346(b)(1); and

5

(2) plaintiffs' allegations failed under the "discretionary function exception" to the FTCA, *see id.* § 2680(a). Both issues implicate the district court's subject-matter jurisdiction because both are conditions on the government's waiver of its sovereign immunity. *See Garling v. U.S. Envtl. Prot. Agency*, 849 F.3d 1289, 1294-95, 1299 & n.6 (10th Cir. 2017) (discussing jurisdictional nature of discretionary function exception); *Dorking Genetics v. United States*, 76 F.3d 1261, 1264 (2d Cir. 1996) (noting jurisdictional nature of analogous tort liability under § 1346(b)).

The parties fully briefed both issues. Given its dismissal based on analogous tort liability, the district court declined to consider whether the discretionary function exception applied. *See* Aplt. App., Vol. II at 474. The government now reasserts this alternate jurisdictional issue on appeal. Plaintiffs have responded to the government's argument in their reply brief.

The "discretionary function exception poses a jurisdictional prerequisite to suit, which the plaintiff must ultimately meet as part of his overall burden to establish subject matter jurisdiction." *Garcia v. U.S. Air Force*, 533 F.3d 1170, 1175 (10th Cir. 2008) (internal quotation marks omitted). To determine whether agency action falls within this FTCA exception, we apply a two-part test. *See Garling*, 849 F.3d at 1295. "First, we determine whether the conduct was discretionary— whether it was a matter of judgment or choice for the acting employee." *Id.* (internal quotation marks omitted). In reaching this determination we ask whether "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.* (internal quotation marks omitted). If so, "the employee

6

has no rightful option but to adhere to the directive," and the conduct is not discretionary. *Id.* (internal quotation marks omitted).

But to avoid dismissal based on the discretionary function exception, the mandatory duty the government allegedly breached must also bear a causal relationship to plaintiffs' injuries. *See, e.g., Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1133 (10th Cir. 1999) (stating FTCA complaint did not avoid discretionary function exception where, assuming directive to prepare case memoranda weighing alternatives created mandatory duty, complaint failed to "attribute any harm to the breach of a specific mandate to draft memoranda, as opposed to a failure to perform the discretionary function of weighing options"); *cf. Berkovitz ex rel. Berkovitz*, 486 U.S. 531, 537 (1988) ("[T]he discretionary function exception insulates the Government from liability *if the action challenged in the case* involves the permissible exercise of policy judgment." (emphasis added)).

"Second, if the conduct was discretionary, we consider whether it required the exercise of judgment based on considerations of public policy." *Garling*, 849 F.3d at 1295 (internal quotation marks omitted). "If both elements are met, the governmental conduct is protected by a discretionary function, and sovereign immunity bars a claim that involves such conduct." *Id.*

### 1.  Discretionary Nature of the Alleged Conduct

As a general matter, law enforcement decisions surrounding the investigation and prosecution of crimes, including "whether or not to disclose information regarding potential threats," involve the exercise of discretion. *Gonzalez v. United*

*States*, 814 F.3d 1022, 1028 (9th Cir. 2016).  In addition, "the decision to use informants is a discretionary function" in which the government must take into account that "informants do not come free of criminal history."  *Ostera v. United States*, 769 F.2d 716, 718 (11th Cir. 1985) (per curiam).  Notwithstanding these general principles, plaintiffs identify six specific regulations or policies that they assert created a mandatory duty in their case:  (1) a requirement in the DEA's guidelines and Attorney General policy to obtain approval from the lead state prosecutor before establishing an informant; (2) instructions "clearly outlined in DEA policy" requiring agents to avoid endangering or causing injury to others, Reply Br. at 3; (3) a requirement in DEA policy to conduct a risk assessment and make a suitability determination before employing an informant; (4) "DEA policy regarding informant handling and standards of conduct, the [Attorney General] Guidelines regarding use of informants, and New Mexico State law," *id.* at 4; (5) Attorney General Guidelines that prohibit agents from using a confidential informant in ways that would violate court-imposed conditions of supervision; and (6) procedures requiring on-going progress reports to the state prosecutor concerning an informant's cooperation with the DEA.[2]  Having carefully considered each of these policies, we conclude that each fails to circumvent the discretionary function exception.  The

---

[2]  Plaintiffs also direct us to a total of "16 allegations of policy breaches" that can be found in their first amended complaint and their district court response to the government's motion.  Reply Br. at 6.  Any argument based on these additional instances has been insufficiently briefed and therefore waived.  *See Fulghum v. Embarq Corp.*, 785 F.3d 395, 410 (10th Cir. 2015).

8

identified policies either are insufficiently specific to establish the required mandatory duty or plaintiffs have failed to plausibly allege specific facts showing that the asserted policy violation resulted in their injuries.

### 2. Public Policy Considerations

The second element of the discretionary function exception is also met here. The government's decisions about whether to use Mr. Quintana as an informant, how to best supervise him in order to protect the public, and whether to notify others about dangers he might pose "required the exercise of judgment based on considerations of public policy." *Garling*, 849 F.3d at 1295 (internal quotation marks omitted). As the Ninth Circuit has explained:

> [A]ny agent choosing whether to disclose information must weigh the credibility and seriousness of the threatened criminal activity against the possible risks—to an informant, if disclosure might reveal his cooperation with the government; to an intended victim, if disclosure might put him in greater danger; to other potential victims, if disclosure might also endanger them; or to ongoing investigations, if disclosure might jeopardize their success. These considerations surely implicate social, economic, and political judgments.

*Gonzalez*, 814 F.3d at 1033.

Similar policy-based considerations, weighing factors such as the risks of disclosure of informants and operations and jeopardizing the success of investigations against public safety, apply not only to the government's duty to notify potential victims of harms but also to decisions concerning whether to employ a particular informant and the appropriate measures to be taken to protect the public from potential harm caused by government informants.

9

## CONCLUSION

We affirm the district court's order denying plaintiffs' Rule 59(e) motion.

Plaintiffs' motion to certify questions of state law to the New Mexico Supreme Court

is denied.

Entered for the Court


Allison H. Eid
Circuit Judge